In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1189

Gary Millbrook,

Plaintiff-Appellee,

v.

IBP, Inc.,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98-4121--Michael M. Mihm, Judge.

Argued September 20, 2001--Decided February 20, 2002


   Before Bauer, Manion, and Evans, Circuit
Judges.

   Manion, Circuit Judge.  Gary Millbrook,
a janitor at IBP, Incorporated, sued his
employer under Title VII and 42 U.S.C.
sec. 1981, alleging that IBP
discriminated against him on the basis of
his race eight times when it selected
other candidates to fill the position of
Quality Control Inspector. A jury
rejected seven of Millbrook's eight
discrimination claims, but concluded that
IBP had discriminated against Millbrook
on one occasion. The jury awarded
Millbrook $7,500 in pain and suffering,
$25,000 in lost wages, and $100,000 in
punitive damages. The district court also
ordered IBP to instate Millbrook as a
Quality Control Inspector and awarded him
attorney's fees. Both before and after
the jury verdict, IBP moved for judgment
as a matter of law. The district court
denied both motions. IBP appeals. We
reverse.

I.

   Gary Millbrook began working as a
janitor at IBP's Joslin, Illinois plant
in November 1995. IBP is in the meat
processing business and is regulated by
the United States Department of
Agriculture ("USDA"). According to
Millbrook, he accepted the janitorial
position because he hoped to advance

within IBP to the position of Quality Control Inspector, and eventually obtain a position with the USDA.

Quality Control Inspectors at IBP are in charge of inspecting the processing of carcasses and end-products, and assuring that they meet the standards of the USDA, IBP, and the customer. Quality Control Inspectors are also responsible for completing the paperwork required by the USDA. While the position of Quality Control Inspector is sought after, it is also stressful because in policing the product quality, the inspectors must often confront production supervisors. Accordingly, IBP seeks people with strong communication skills.

IBP employs approximately forty Quality Control Inspectors, with about twenty inspectors working the daytime "A Shift" and the other twenty working the nighttime "B Shift." Shift A inspectors report to Quality Control Supervisor Roger Baylor, and B Shift inspectors report to Audrey Jordan. Both Baylor and Jordan were responsible for interviewing candidates when Quality Control Inspector positions became available. During 1996 and 1997, IBP authorized Baylor and Jordan to make the final hiring decision, with instructions to select the best qualified applicant.

In January 1996, Millbrook applied for the position of Quality Control Inspector. IBP selected another candidate for the position. Between 1996 and 1998, Millbrook applied an additional nine times for the position of Quality Control Inspector, but on each occasion IBP selected another applicant. On November 30, 1998, Millbrook sued IBP for race discrimination under Title VII and Section 1981, alleging that IBP discriminated against him on eight of the ten occasions that he applied for, and was denied, the Quality Control Inspector position; Millbrook admits that on the other two occasions, the other applicants were better qualified.

Millbrook's case was tried before a jury. At trial, Millbrook presented evidence concerning the qualifications of the eight applicants selected over him for the position of Quality Control Inspector. Millbrook argued that he had better qualifications than all of the

other applicants, but that IBP chose the other applicants over him because he is black. IBP argued in response that on each occasion that Millbrook applied for the position of Quality Control Inspector, another applicant was better qualified, and that it always selected the best qualified candidate to fill the vacancy.

At the close of evidence, IBP moved for judgment as a matter of law, but the district court denied its motion, sending the case to the jury. On a verdict form with specific interrogatories, the jury rejected seven of Millbrook's eight claims of race discrimination, but concluded that IBP had discriminated against Millbrook on the basis of race when it selected DeWayne Harris over him in June 1997. The jury awarded Millbrook $7,500 in pain and suffering, $25,000 in lost wages, and $100,000 in punitive damages. After the jury verdict was returned, IBP again moved for judgment as a matter of law, but the district court denied that motion as well. Millbrook then moved for attorney's fees, and for a court order directing IBP to instate him as a Quality Control Inspector. The district court granted Millbrook attorney's fees and also ordered IBP to fill the next Quality Control Inspector vacancy with Millbrook.

IBP appeals, arguing that it was entitled to judgment as a matter of law because Millbrook failed to present sufficient evidence to support a verdict of race discrimination. Alternatively, IBP argues that Millbrook failed to establish a right to punitive damages. IBP also argues that the district court erred in ordering Millbrook instated as the next Quality Control Inspector.

II.

On appeal, IBP first argues that the district court erred in denying its motion for judgment as a matter of law. See Fed.R.Civ.P. 50(a). We review the denial of this motion de novo, examining the record as a whole to determine wheth er the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, was sufficient to support the jury's verdict of race discrimination. Collins v. Kibort, 143 F.3d 331, 335 (7th Cir. 1998). While

"[w]e will overturn a jury verdict for the plaintiff only if we conclude that no rational jury could have found for the plaintiff," id., "a mere scintilla of supporting evidence will not suffice." Futrell v. J.I. Case, 38 F.3d 342, 346 (7th Cir. 1994).

Initially, we stress that the only issue on appeal is IBP's selection of Harris over Millbrook in June 1997. While Millbrook applied a total of ten times for the position of Quality Control Inspector, and while he sued alleging race discrimination on eight of those ten occasions, the jury rejected all of Millbrook's claims except for the one based on IBP's selection of Harris. Millbrook does not appeal the jury's verdict in favor of IBP on the other seven counts. Therefore, the sole issue on appeal is whether sufficient evidence supports the jury's finding that IBP discriminated against Millbrook on the basis of race when it hired Harris over him.

Before reviewing the evidence, we also pause to clarify what "sufficiency of the evidence" means following a trial in a discrimination case. On appeal, both parties frame the issue as whether sufficient evidence supported a finding that IBP's asserted reason for selecting Harris over Millbrook--his superior qualifications--was pretextual under the McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

The indirect burden-shifting approach of McDonnell Douglas is one method of proving discrimination, and since Millbrook does not purport to have direct evidence of race discrimination, it is the only method at his disposal. Under this method, a Title VII plaintiff must establish a prima facie case of unlawful discrimination. "This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications," id. at 802, or that "the position was filled with a person not in

the protected class." Gorence v. Eagle Food Centers, Inc., 242 F.3d 759, 765 (7th Cir. 2001). After the plaintiff has established a prima facie case, an inference of discrimination exists. The burden of production then shifts to the defendant-employer to produce evidence of a legitimate, nondiscriminatory reason for its employment decision. Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 629 (7th Cir. 1996). "Once this burden of production is met, any inference of discrimination evaporates. To prove unlawful discrimination at this stage, the plaintiff must demonstrate to the jury that the reason proffered by the employer was mere pretext, an explanation designed to obscure the unlawful discriminatory employment action." Id.

In this case, both parties agree that Millbrook presented a prima facie case of race discrimination, and that IBP responded with a legitimate non-discriminatory explanation for its selection of Harris. Therefore, on appeal the parties focus on the issue of pretext. However, once a trial is complete and judgment rendered, the burden-shifting framework of McDonnell Douglas falls away: "Post-trial we consider only whether the record supports the resolution of the ultimate question of intentional discrimination." Collins, 143 F.3d at 335. Accordingly, the appropriate question on appeal is not whether IBP's proffered reason for rejecting Millbrook's application was pretextual, but rather whether sufficient evidence supports the jury's finding that IBP discriminated against Millbrook because he is black. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000) ("The ultimate question is whether the employer intentionally discriminated, . . .").

The question of pretext, however, can still be relevant. As the Supreme Court explained in Reeves, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148. In other words, if the plaintiff proves at trial that the defendant's proffered reason for its employment decision was false, i.e., pretextual, that is "one form of

circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." Id. But "[i]t is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." Id. Thus, as the Supreme Court in Reeves stressed, the existence of the prima facie case, coupled with evidence of pretext, is not always enough to satisfy the plaintiff's burden of proving intentional discrimination. Id. at 146-47 ("This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.").

Applying Reeves, we must first consider whether Millbrook presented sufficient evidence of pretext--not because that is dispositive, but because if IBP's asserted justification for selecting Harris were pretextual, that could constitute circumstantial evidence that IBP intentionally discriminated against Millbrook. From there, we review the record as a whole to determine whether the evidence in its entirety supports a reasonable inference of race discrimination. Id. at 148.

Pretext "means a lie, specifically a phony reason for some action." Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995). The question is not whether the employer properly evaluated the competing applicants, but whether the employer's reason for choosing one candidate over the other was honest. Brill v. Lante Corp., 119 F.3d 1266, 1273 (7th Cir. 1997). "'Pretext for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." Clay v. Holy Cross Hosp., 253 F.3d 1000, 1005 (7th Cir. 2001) (internal citations omitted). Thus, even if IBP's reasons for selecting Harris over Millbrook were "mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons, pretext has not been shown." Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000).

In this case, IBP stated that it selected Harris over Millbrook because Harris was more qualified, while Millbrook argues that this explanation was a lie. First, Millbrook contends that the jury could reasonably conclude that IBP lied about its reason for selecting Harris because IBP provided a different explanation at trial than it did during the interview process. To support this argument, Millbrook points to the comment section of the Applicant Flow Log, which the B Shift Manager, Audrey Jordan, compiled when she interviewed Harris. On the Applicant Flow Log, Jordan noted that Harris had prior experience. This, according to Millbrook, contradicted IBP's proffered trial rationale--that Harris was more qualified. But the Applicant Flow Log does not purport to be IBP's explanation of its hiring decision; rather, the Flow Logs consist of interview notes which the managers used to record their impressions during the interviews. Moreover, contrary to Millbrook's position, there is nothing inconsistent in IBP's trial position. At trial, IBP explained that it selected Harris because he was more qualified for the position, and it then explained why it believed Harris to be better qualified--because Harris had prior experience in quality control, possessed superior communication skills, and conveyed a confident demeanor. She further explained that these attributes would allow Harris to handle the pressures of confronting production supervisors. Rather than contradict the trial testimony, the Application Flow Log actually confirms IBP's assertion that it believed Harris to be more qualified.

Next, Millbrook points out that IBP hired Harris over him even though Harris did not submit a resume, whereas IBP rejected numerous other candidates who failed to submit a resume. On appeal, IBP explains that it only required internal applicants to submit resumes; candidates who did not work at IBP were required to complete a more extensive application form. Because Harris was not a current IBP employee, he needed to submit a detailed application, but no resume was required. However, as a current employee, Millbrook was required to submit only a resume. The evidence at trial confirms that the applicants whom IBP rejected for

failing to submit a resume were current employees, thus verifying IBP's explanation of what appeared to be disparate treatment. Therefore, contrary to Millbrook's position, the fact that IBP required him to submit a resume, but not Harris, is not evidence of pretext.

Millbrook next claims that "negative subjective comments regarding other African-American applicants" made by Audrey Jordan and Roger Baylor on the Application Flow Logs demonstrate their racial bias. Specifically, Millbrook points to interview notes such as "shows no real interest," "no skills experience pertaining to this position," "gave poor and incomplete answers to questions," and "lacks ability to answer questions clearly."

Initially, we note that "nothing in Title VII bans outright the use of subjective evaluation criteria." Sattar v. Motorola, Inc., 138 F.3d 1164, 1170 (7th Cir. 1998). See also, Denney v. City of Albany, 247 F.3d 1172, 1186 (11th Cir. 2001) ("It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation.") (internal quotation omitted). Rather, "[a] subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the McDonnell Douglas/Burdine analysis." Denney, 247 F.3d at 1185 (internal quotation omitted). In fact, "subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service-oriented economy. . . ." Id. at 1185-86 (internal quotations omitted). Thus, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII . . . ." Id. at 1185. See also, Weihaupt v. American Medical Ass'n, 874 F.2d 419, 429 (7th Cir. 1989) (the mere fact that an employer's beliefs were based on subjective factors fails to establish that its assessment of employee's skills was made in bad faith); Dorsch v. L.B. Foster Co., 782 F.2d 1421, 1427 (7th Cir.

1986) (a "subjective qualification assessment does not convert an otherwise legitimate reason into an illegitimate one").

In this case, there is absolutely no evidence that the subjective criteria IBP considered in evaluating Millbrook and other candidates served as a "mask for discrimination." The subjective interview comments Millbrook points to, while negative, were all race-neutral. Additionally, at trial, IBP provided specific facts supporting its subjective evaluation of Millbrook. For instance, Jordan explained that she concluded that Millbrook had poor communication skills because he failed to make eye contract during the interview and did not seem confident in his answers. Moreover, similar comments were made of white and other non-black applicants, negating any possible inference that the comments were codes for race. Therefore, contrary to Millbrook's position, the negative comments do not create an inference of pretext, but instead merely indicate that the candidates were lacking traits needed for the job, which explains why they were not selected by IBP. See, e.g., Sattar, 138 F.3d at 1170.

Next, Millbrook argues that the fact that during 1996 and 1997 Audrey Jordan (the supervisor who selected Harris instead of him) did not hire any blacks as Quality Control Inspectors creates an inference of pretext. However, while Millbrook focuses on 1996 and 1997, his discrimination claims are based on the years of 1996-1998, and the record demonstrates that during 1998, Jordan offered a position to a black candidate. In any event, absent a "link between this alleged discrimination and the employment decisions which [the plaintiff] is challenging, this evidence does not assist the plaintiff." Sample v. Aldi, Inc., 61 F.3d 544, 551 (7th Cir. 1995). Moreover, the fact that no blacks were hired during a two-year time frame is at best anecdotal, and we have held that we "cannot find discrimination on such a thin basis." Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir. 1996). Rather, "[o]ur opinions emphasize the need to get beyond a few comparison cases." Id. Instead, "[w]hat a plaintiff in [Millbrook's] position has to do is subject all of the employer's decisions

to statistical analysis to find out whether [race] makes a difference." Kuhn, 78 F.3d at 332. Millbrook did not present a statistical analysis--he merely pointed to the fact that he and another black candidate were rejected, and that no other blacks were hired in a two-year time frame. Without knowing how many of the forty Quality Control Inspector positions became available during that time frame, the number and race of the candidates applying for those positions, and the candidates' relative qualifications, "[s]uch a list is next to worthless." Id. See also, Odom v. Frank, 3 F.3d 839, 849 (5th Cir. 1993) (raw data of age, race and location of persons promoted from 1980-1993, "without more, is not competent to prove anything"). Under these circumstances, the fact that during a two-year time frame no blacks were hired to fill an unknown number of vacancies fails to create a reasonable inference that IBP was lying when it explained that it hired Harris over Mill brook because it believed Harris to be better qualified.

Finally, Millbrook argues that the jury was allowed to view his qualifications compared to Harris and "could easily have concluded that Mr. Millbrook's college education, significant management experience, experience in the industry, prior communication skills through his job with Black Hawk College, his exemplary personnel record and general qualifications made him more qualified than Mr. Harris." IBP responds that while Millbrook had a college degree, it was in an unrelated area--education--whereas Harris had completed some relevant college courses, including relevant quality control management course work. IBP further points out that while Millbrook worked at IBP, his experience as a janitor (and even as a janitor supervisor at Black Hawk College) was irrelevant to the position of Quality Control Inspector. IBP also points out that while Millbrook worked for another meat packaging company, he only worked there for nine months, and his job did not include quality control responsibilities. Additionally, that job dated back to the 60's--long before new USDA standards were implemented. Harris on the other hand had prior-- and more recent--work experience in quality control, and had leadership skills from

serving as a sergeant in the Air Force and acting as a platoon leader. Finally, IBP contends that Millbrook's communication skills were lacking and given the confrontational nature of the Quality Control Inspector position, it was essential that applicants possess superior communications skills. Harris had those skills, as demonstrated by his Communicator of the Year award from the Air Force in 1995.

What we have here then are two qualified applicants with varying credentials, and different views as to which candidate is best for the job. Millbrook argues that when an employer asserts that it chose another applicant over the plaintiff because the selected candidate was more qualified, the jury may return a verdict of discrimination if, after reviewing the applicants' relative qualifications, it simply does not believe the employer's assertion.

In support of his position, Millbrook cites Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627 (7th Cir. 1996), and Bell v. Environmental Protection Agency, 232 F.3d 546 (7th Cir. 2000). At first blush, language in both Emmel and Bell appears to give some support to Millbrook's position. Emmel, 95 F.3d at 633 ("Emmel's indirect case is built on the evidence that she was more qualified than at least some of those men promoted," and while Coca-Cola presented a legitimate non-discriminatory explanation, "the jury did not have to believe it."); Bell, 232 F.3d at 551 ("The EPA cannot escape scrutiny merely by claiming that they selected the most qualified candidates," and a fact-finder "could reasonably find that the EPA was dishonest when it concluded that the selectees were more qualified for the promotions than the plaintiffs were.").

However, in both of those cases there was evidence of discrimination in addition to the differences in relative qualifications. For instance, in Emmel, in addition to the evidence of the candidates' relative qualifications, the plaintiff presented direct evidence of discrimination, including testimony that after she was passed over for the promotions, Coca-Cola Vice President John Walsh took her aside, stating "Let's close the door and speak honestly. Karen,

you know, as we all know, they wanted men in these positions . . . ." Emmel, 95 F.3d at 630. Emmel presented further direct evidence including other statements from top officers that "'they' believed women had no role in upper management.'" Id. at 632. Emmel also presented evidence calling into question Coca-Cola's proffered trial explanation for its employment decision, namely its failure to provide an explanation--other than the obviously impermissible one that "they wanted men in these position"-- and that it was not until trial that Coca-Cola justified its decision with a non-discriminatory reason. Id. at 634-35. Likewise, in Bell, the plaintiff presented evidence in the form of "an internal EPA document [which] suggests that the EPA did not select the best candidates." Bell, 232 F.3d at 551. Bell also presented statistical evidence supporting the plaintiff's claim of discrimination./1

In sum, in both Emmel and Bell the plaintiffs presented evidence of discrimination beyond the relative qualifications of the candidates. See Emmel, 95 F.3d at 635; Bell, 232 F.3d at 554. However, absent such additional evidence of discrimination, this court has held that a jury verdict for the employee cannot stand if the jury is simply disagreeing with the company as to who is best qualified.

For instance, in Lindale v. Tokheim Corp., 145 F.3d 953 (7th Cir. 1998), the plaintiff sought to sustain the jury's verdict of sex discrimination based on her comparative qualifications. We reversed the district court's denial of the employer's motion for judgment as a matter of law, holding that "[t]he comparison evidence is so weak in the circumstances that it cannot by itself support an inference of discrimination-- and there is virtually nothing else." Id. at 957 (emphasis added).

Likewise, in Guerrero v. Ashcroft, 253 F.3d 309 (7th Cir. 2001), the plaintiff sought to prove pretext based on a comparison of the candidates' qualifications. In that case, Antonio Guerrero, an Hispanic FBI agent, sued the Attorney General under Title VII for race and national origin discrimination after he was denied a promotion to a GS-14

level of one of the FBI's Organized Crime Squads. Id. at 311. The FBI claimed that it selected another candidate over Guerrero because of deficiencies in Guerrero's background as compared to the agent who received the promotion. Id. at 314-15. The district court granted the FBI summary judgment, concluding that Guerrero had failed to present sufficient evidence of pretext. Guerrero appealed, arguing "that pretext becomes evident when one compares his skill ratings to those of other agents. Guerrero contends that he had comparable, and in some areas, notably drug investigation, more extensive and recent experience than other agents, yet was rated lower." Id. at 314. This court rejected Guerrero's invitation to reevaluate his credentials, stating that "[w]e cannot second-guess the appropriateness of this business judgment," and holding that "we find no evidence of pretext in them." Id. at 314-15. Accordingly, we affirmed the grant of summary judgment./2 Id. at 315.

On the surface there appears to be some tension between the holdings of Lindale and Guerrero, and those of Emmel and Bell. But there is a clear distinction. In Emmel and Bell there was additional evidence of discrimination, whereas in Lindale and Guerrero the plaintiff's case consisted solely of the competing candidates' comparative qualifications. Perhaps because the facts did not require it, neither Lindale nor Guerrero on the one hand, nor Emmel nor Bell on the other, pointed out that distinction. In fact, these two lines of cases appear to have developed independently, leaving unanswered in this circuit the question as to when evidence of comparative qualifications constitutes sufficient evidence to support a jury verdict of discrimination. We thus look to our sister circuits for guidance.

The Fifth Circuit in Deines v. Texas Dept. of Protective and Regulatory Services, 164 F.3d 277 (5th Cir. 1999), reiterated that circuit's general rule that "differences in qualifications between job candidates are generally not probative evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position

at issue." Id. at 279. The court specifically held that the district court did not err when instructing the jury that "disparities in qualifications are not enough in and of themselves to demon strate discriminatory intent unless those disparities are so apparent as to virtually 'jump off the page and slap you in the face.'" Id. The court further explained that

apart from searching for discriminatory intent, it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position; nor is it the jury's task to weigh the respective qualifications of the applicants. Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide. The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.

Id. See also, Celestine v. Petro de Venezuella SA, 266 F.3d 343, 356-57 (5th Cir. 2001); Scott v. University of Mississippi, 148 F.3d 493, 508 (5th Cir. 1998); EEOC v. Louisiana Office of Community Service, 47 F.3d 1438, 1445 (5th Cir. 1995); Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993).

  The Second, Tenth, Eleventh, and D.C. Circuits have followed the Fifth Circuit's lead. For instance, in Byrnie v. Town of Cromwell, 243 F.3d 93, 103 (2d Cir. 2001), the Second Circuit held that "when a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications, . . . [i]n effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Id. at 103 (quoting Deines, 164 F.3d at 280-81). Similarly, in Lee v. GTE Florida, Inc., 226 F.3d 1249 (11th Cir. 2000), the Eleventh Circuit held that the "evidence [was] insufficient to raise a genuine issue of fact regarding whether [the employer's] stated reason for promoting [the other candidate] instead of [the plaintiff] is pretextual. None of

[plaintiff's] proffered evidence established that she was more qualified than [the other candidate], let alone so clearly more qualified for the position than [plaintiff] that a reasonable juror could infer discriminatory intent from the comparison." Id. at 1255. See also, Denney v. City of Albany, 247 F.3d 1172, 1187 (11th Cir. 2001) ("Our precedent, however, requires a strong showing of a disparity in qualifications in order for an inference of discrimination to arise."); Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000) ("In a failure to promote case, however, a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted."). Likewise, in Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services, 165 F.3d 1321 (10th Cir. 1999), the Tenth Circuit held that "[w]hen two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria." Id. at 1330. The D.C. Circuit adopted a similar standard in Fischbach v. District of Columbia Department of Corrections, 86 F.3d 1180 (D.C. Cir. 1996): "Evidence in dicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination, if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so." Id. at 1183 (internal citation omitted).

This standard--first set forth by the Fifth Circuit, and since followed by four other circuits--is appropriate. Accordingly, we now hold that where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not consti tute evidence of pretext "unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." Deines, 164 F.3d at 279. In other

words, "[i]n effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Byrnie, 243 F.3d at 103 (quoting Deines, 164 F.3d at 280-81).

This makes sense because a court's "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." Simms, 165 F.3d at 1330. As we have stated, "[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [Title VII] does not interfere." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988) (internal quotation omitted). Rather, this "court must respect the employer's unfettered discretion to choose among qualified candidates." Fischbach, 86 F.3d at 1183. If we were to allow a jury to evaluate competing credentials to determine whether the employer's assertion that it selected the best candidate was pretextual, the jury would in most cases be replacing the employer's personnel department. Yet neither the judge nor the jury is "as well suited by training and experience to evaluate qualifications for high level promotion in other disciplines as are those persons who have trained and worked for years in that field of endeavor for which the applications under consideration are being evaluated." Odom, 3 F.3d at 847.

This standard is also consistent with our frequent admonitions "that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions." Ost v. West Suburban Travelers Limousine, Inc., 88 F.3d 435 (7th Cir. 1996). Similarly, we have held that mere "submission of materials from a co-worker or supervisor indicating that an employee's performance is satisfactory does not . . . create a material issue of fact." Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125 (7th Cir. 1994). A plaintiff's contention that he is the better

candidate for a vacancy constitutes nothing but the employee's own opinion as to his qualifications. This cannot create an issue of material fact because "[a]n employee's perception of his own performance . . . cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities." Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 602 (7th Cir. 2001). "And without proof of a lie [as to what the employer believed] no inference of discriminatory motive can be drawn." Id.

Finally, this standard is consistent with the plaintiff's ultimate burden of proof in discrimination cases. Such a plaintiff cannot get to a "jury if his only 'evidence' had been that defendants' witnesses were not worthy of belief. That would have made it a no-evidence case, and such a case a plaintiff must lose, because he has the burden of proof." Equal Employment Opportunity Commission v. G-K-G, Inc., 39 F.3d 740, 746 (7th Cir. 1994) (internal citations omitted). Rather, "to avoid a directed verdict or a JNOV, a plaintiff must do more than merely argue that the jury might have chosen to disbelieve all of the defendant's evidence. . . . A plaintiff must offer substantial evidence to support the argument." Perfetti v. First National Bank of Chicago, 950 F.2d 449, 456 (7th Cir. 1991) (internal quotations omitted). Thus, "[a] party cannot meet its burden of proof 'by relying on the hope that the jury will not trust the credibility of the witnesses. . . .'" Id. (internal citation omitted). Yet that is exactly what Millbrook attempts; he seeks to justify the jury verdict based on his contention that the jury could have disbelieved IBP's assertion that it selected Harris because of his superior qualifications. However, without some affirmative evidence calling into question IBP's credibility, Millbrook must lose. See also, Fischbach, 86 F.3d at 1183 ("Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates."). Thus, to reconcile this precedent, we must adopt the standard that we have today--that comparative qualifications do not support a finding of pretext--or we would be allowing plaintiffs to reach the jury based solely

on a claim that the employer cannot be believed. We have consistently rejected such claims. See, e.g., Massey v. Blue Cross-Blue Shield of Illinois, 226 F.3d 922, 926 (7th Cir. 2000) ("It is always possible, of course, that the jury might have disbelieved everything [the employer] said, but we routinely deny summary judgments based on that kind of hope, and consistency requires us also to reject that possibility as a way of saving the jury's verdict.").

   Applying this standard to the facts at hand, we note initially that it is a close question as to whether Millbrook's qualifications are equivalent to or exceed those of Harris. While Millbrook had a college education, his degree was in an unrelated field, education, and Harris had completed some college course work in the relevant area of management. Harris also had experience in quality control, whereas Millbrook did not. Harris' tour of duty with the military is also a credential highly valued by many employers because of the discipline, respect, work ethic, and many other valuable virtues military service instills. And, during his time with the Air Force, Harris demonstrated his communication skills, as documented by his Communicator of the Year Award. IBP explained that it sought out candidates with such qualifications because Quality Control Inspectors must possess superior communication skills given the confrontational nature of the position. But, even assuming that Millbrook was better qualified than Harris, his credentials were not clearly superior, and therefore a reasonable employer could have concluded that Harris was the better person for the job. Accordingly, a comparison of the relative qualifications of Millbrook and Harris is by itself not probative of pretext./3

   In sum, none of the evidence Millbrook cites as evidence of pretext supports a reasonable inference that IBP lied when it explained its rationale for selecting Harris--his superior qualifications./4 While Millbrook believes the jury should be allowed to review the candidates' relative qualifications to decide whether or not IBP lied, without any evidence calling into question IBP's veracity, what this case really comes down to is the jury deciding which applicant is more

qualified. But believing or not believing the decisionmaker is simply saying that the employer made the wrong choice--which is not illegal. Because there is no evidence of pretext, Millbrook has failed to create an inference that IBP intentionally discriminated against him by hiring Harris.

Moreover, even if we were to assume that the above evidence constituted evidence of pretext, under Reeves, that would not end the inquiry. As Reeves made clear, the existence of the prima facie case, coupled with evidence of pretext, is not always enough to satisfy the plaintiff's burden of proving intentional discrimination. Rather, "an employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 148.

In this case, assuming that Millbrook presented evidence of pretext, at best he "created only a weak issue of fact as to whether the employer's reason was untrue." Id.  There is absolutely no other evidence of intentional discrimination--not one racist comment, nor any harassment. Millbrook admitted at trial that no one at IBP made any comments indicating that race played a factor in its selection of Quality Control Inspectors. In fact, of the 443 pages of trial transcript, less than five full pages focused on the selection of Harris over Millbrook. In short, Millbrook has no proof that IBP denied him a promotion because of his race. The case he presented is simply not enough under Reeves to sustain a jury verdict in his favor, even if some evidence of pretext had existed.

In a final attempt to salvage a victory, Millbrook points out that IBP has a "Herculean burden" to overcome a jury verdict. Gile v. United Airlines, Inc., 213 F.3d 365, 372 (7th Cir. 2000). While it is true that it is difficult to set aside a jury verdict, our review of the evidence is not a rubber stamp of a jury's decision. Notwithstanding this standard of mythical proportions, we have overturned jury verdicts in

discrimination cases very similar to the case at hand.

For instance, in Shank v. Kelly-Springfield Tire Company, 128 F.3d 474 (7th Cir. 1997), a jury returned a verdict of age discrimination in favor of Robert Shank, who sued his former employer, Kelly-Springfield Tire Company, after he was fired. Kelly-Springfield maintained that it had fired Shank because Shank had filed a fraudulent claim for a refund in violation of company policy. A jury, however, rejected that explanation. Kelly-Springfield then moved for judgment as a matter of law, but the district court denied that motion. On appeal, this court reversed, concluding that Shank failed to present sufficient evidence of age discrimination to support the jury's verdict.

Shank, like Millbrook, argued that the jury could have inferred that Kelly-Springfield fired him because of his age if it disbelieved the company's proffered explanation for its employment decision. Id. at 478. However, after reviewing the evidence in its entirety, we concluded that none of the evidence Shank presented to demonstrate pretext called into question the veracity of the company's explanation. Id. at 480. While Shank argued that the jury could have inferred that Kelly-Springfield had lied about its reason for firing Shank, we concluded that without some evidence supporting that inference, a jury verdict could not stand. Accordingly, we held that Kelly-Springfield was entitled to judgment as a matter of law. Id. Similarly, in this case, without any evidence that IBP lied about its reason for selecting Harris and without any other evidence of discrimination, IBP was entitled to judgment as a matter of law.

Shank is just one of the many cases where we have overturned a jury verdict because of insufficient evidence, demonstrating that the Herculean burden of which we spoke does not protect plaintiffs lacking in evidence. Shank, 128 F.3d 474. See also, Aungst v. Westinghouse Electric Corp., 937 F.2d 1216 (7th Cir. 1991) (affirming district court's decision granting defendant judgment as a matter of law because plaintiff failed to present sufficient evidence of pretext to sustain jury

verdict of age discrimination); Massey v. Blue Cross-Blue Shield of Illinois, 226 F.3d 922 (7th Cir. 2000) (district court properly granted defendant judgment as a matter of law because plaintiff failed to present sufficient evidence that employer's legitimate nondiscriminatory reasons for her discharge--her poor writing skills and inability to investigate and follow through--were pretextual)./5 As in these cases, Millbrook failed to present sufficient evidence of intentional discrimination, and therefore the jury verdict cannot stand.

III.

Hiring decisions are often difficult and sometimes require companies to make close calls, but those decisions are for the employer to make--not the court and not the jury--unless there is evidence of illegal discrimination. In this case, Millbrook presented absolutely no direct evidence of race discrimination, and while he attempted to rely on an inference of discrimination by challenging IBP's explanation for its selection of Harris, he failed to present any evidence calling into question the veracity of IBP's explanation. While Millbrook may believe he was more qualified than Harris (indeed, even if he were arguably the better choice), Title VII is not a merit selection program. Absent evidence that no reasonable employer could believe that it selected the best candidate, we will defer to the employer's decision. Because Millbrook was not clearly more qualified than Harris, their relative qualifications cannot serve as a basis for sustaining the jury's verdict. Rather, we are left with a case where there is no evidence of intentional race discrimination, and therefore IBP was entitled to judgment as a matter of law. Because IBP was entitled to judgment as a matter of law, Millbrook was not entitled to any damages, much less punitive damages, and the award of attorney's fees, costs, and instatement also cannot stand. Accordingly, we REVERSE.

FOOTNOTES

/1 Similarly, in Perdomo v. Browner, 67 F.3d 140 (7th Cir. 1995), upon which Bell relied, while this court noted that a fact-finder could weigh

and balance the plaintiff's credentials and qualifications against those of the selected candidate to determine whether the employer's claim that it hired the best candidate was pretextual, that case also involved additional evidence of discrimination. Id. at 146.

/2 While Guerrero involved a grant of summary judgment, as opposed to judgment as a matter of law, that distinction is irrelevant because the standards mirror each other. Reeves, 530 U.S. at 150.

/3 See, e.g., Byrnie, 243 F.3d at 102-03 (while plaintiff's paper credentials were superior to the chosen candidate's, plaintiff's credentials were not so superior such that no reasonable employer could have selected the candidate it did); Lee, 226 F.3d at 1255 ("Since [plaintiff's] evidence at trial fell far short of establishing that she was clearly more qualified for the position than [the selected candidate, the plaintiff] did not meet her burden of establishing that [the employer's] proffered reason for denying her the promotion was a pretext for gender discrimination."); Denney, 247 F.3d at 1187 ("Not only do Plaintiffs fail to acknowledge this case law, which makes clear that they ultimately must do more to show pretext than prove that they were better qualified than [the selected candidates], but they also fail to make a persuasive showing that they are, in fact, better qualified."); Celestine, 266 F.3d at 357 ("A review of the briefs and record excerpts reveals that none of the [plaintiffs] presented competent summary judgment evidence that they were 'clearly better qualified' for promotion or training. They therefore failed to even attempt to rebut [the employer's] proffered non-discriminatory explanation, making the grant of summary judgment to [the employer] proper."); Odom, 3 F.3d at 846-47 (district court's finding that plaintiff was "clearly better qualified" for position constituted clear error); Scott, 148 F.3d at 509 ("In sum, we conclude that [the plaintiff's] qualifications are not 'so superior' to those of [the chosen candidate] to allow an inference of pretext.") (internal quotation omitted).

/4 While Millbrook asserted four other evidential theories of pretext beyond Harris and his relative qualifications, as discussed above, that evidence failed to create a reasonable inference that IBP lied when it explained why it hired Harris. See supra at 8-11. Adding those four pieces of evidence with the comparative qualification evidence does nothing for Millbrook because the sum of many nothings is nothing. See Holmberg v. Baxter Healthcare Corp., 901 F.2d 1387, 1391 (7th Cir. 1990) ("[T]he sum of four nondiscriminatory episodes does not support [a]

case any more than viewing the four episodes separately.").

/5 Cf., Rand v. CF Indust. Inc., 42 F.3d 1139 (7th Cir. 1994) (defendant-employer entitled to summary judgment because plaintiffs failed to present sufficient evidence of pretext); Olsen v. Marshall & Ilsley Corp., 267 F.3d 597 (7th Cir. 2001) (accord); Kuhn v. Ball State University, 78 F.3d 330 (7th Cir. 1996) (accord); Jordan v. Summers, 205 F.3d 337 (7th Cir. 2000) (accord).

EVANS, Circuit Judge, dissenting. I respectfully dissent. A jury listened to evidence of eight instances in whichMillbrook failed to receive a promotion. He claimed the rejections were because of his race; the company contended that in each instance the candidate promoted was better qualified. A properly instructed jury looked at this evidence and concluded, apparently, that in seven of the cases Millbrook had not met his burden of proof; the person promoted could be seen as better qualified. In the eighth, the jury found that discrimination was afoot. In this appeal of that verdict, the issue, according to the majority, is whether Millbrook was so notably better qualified than Harris that, absent other evidence, the choice to hire Harris over promoting Millbrook must have been discriminatory.

Discrimination today is rarely overt. Sometimes it works underground. It is often very subtle. In today's environment, it is unfair to require plaintiffs to produce smoking guns. So, in a case like this, how much additional evidence are we going to require to bolster the claim of a marginally better, or at least equally qualified, plaintiff who claims discrimination stopped him from getting a promotion? And here, I question whether it is fair to say that, in fact, there was an absence of other evidence. The jury had a broad view of the company's actions as it related to eight employment decisions, not just one. It had evidence, for instance, that no African-Americans were hired in relevant positions in a 2-year period during 1996 and 1997. I believe that there was sufficient evidence to allow a reasonable jury to conclude that overall the company consistently chose the white candidate, and that in the case of Harris (who, unlike the other seven, may not have seemed to the jury to be the better candidate), the company's claim that it picked the better candidate without regard to race was a pretext to cover discriminatory behavior.

During the course of a trial, jurors listen to

witnesses, pass judgment on their credibility, and, in this kind of case, absorb something about the culture of a company; they are pretty good at bringing their common sense to bear on questions of human behavior. This is what juries are for, and in the close case, as this one indisputably is, the jury's judgment should be respected unless no reasonable person could have found as it did. And this jury, it seems, was so convinced that racial discrimination prevented Millbrook from getting the promotion that it tacked on, in its discretion, an award of punitive damages. Accordingly, I would not disturb the jury's verdict.