**Michelle MYLES, Plaintiff,**

v.

**CITY OF INDIANAPOLIS, Marion County Public Defender Agency, David Cook and Kay Beehler, in their offical and individual capacities, Defendants.**

No. IP00–1660–C B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

July 31, 2002.

---

5. The *Hyatt* Plaintiffs do not offer any argument or evidence (or make any allegations) related to inadequate warnings.

Barbara Malone, Attorney at Law, Indianapolis, IN, for Plaintiff.

Daniel M Witte, Assistant Corporation Counsel, Indianapolis, IN, for Defendants.

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, District Judge.

### I. *Introduction.*

This is a race discrimination case. The plaintiff, Michelle Myles, an African–American, served as a paralegal in the Marion County Public Defender Agency, Major Felony Unit. She applied for a promotion to senior paralegal. She was denied the promotion which went, instead, to a Caucasian female, Amber Devane. Ms. Myles alleges three causes of action: one for disparate treatment, a second for disparate impact, and a third for deprivation of her constitutional rights under color of state law. All three boil down to the essential claim that she was denied the promotion on the basis of her race, notwithstanding her superior qualifications for the position. She seeks a remedy pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., as amended, 42 U.S.C. § 1981a, and pursuant to 42 U.S.C. §§ 1981 and 1983.

The case is before us on defendants' motion for summary judgment. For the following reasons we GRANT the motion in its entirety.

### II. *Statement of Facts.*

The following statements are either undisputed or recited in a light reasonably most favorable to the plaintiff.

Michelle Myles is an African–American. She worked as a paralegal in the Marion County Public Defender Agency from October, 1996 until June 28, 2000. She started in Court 16, which handled D Felony cases. About two years later she was promoted to Court 18, which also handled D Felony Cases, but had a larger case load. In 1998, Ms. Myles held the position of senior paralegal. In the fall of 1999, she was promoted to Court 6, which handled major felonies. There she received a raise in pay in January 2000. DSOF ¶¶ 1–6, and Pl. Responses.[1]

Ms. Myles was transferred from Court 6 to Court 20, another major felony court. The parties dispute the reasons for Ms. Myles' transfer. Laura Iosue was a lawyer who served as a public defender in Court 6. Between April 21 and August 13,

---

1. Pursuant to Local Rule 56.1, defendant submitted a Statement of Material Facts consisting of separate numbered paragraphs. We refer to it in abbreviated form in the text as "DSOF" with the appropriate paragraph number. In addition to responding to defendant's statements, plaintiff submitted a Statement of Additional Material Facts, which we cite as "PSAF" with paragraph number.

1999, Ms. Iosue sent four memoranda to then-Chief Deputy Public Defender Bob Hill about perceived deficiencies in Ms. Myles' work performance. Def. Ex. C. DSOF ¶¶ 10–15. Ms. Iosue complained about Ms. Myles's reliability in completing work assignments and her dependability in being available for work. Ms. Iosue's August 13 memo asks for Ms. Myles to be transferred from Court 6. Neither party tells us when the transfer was effectuated. Nevertheless, ·the City attributes the transfer to Ms. Iosue's memoranda. DSOF ¶¶ 7–9.

█ Ms. Myles not only denies the assertion that her work performance was deficient. She points out that none of the memoranda appeared in her personnel file, she never saw them until discovery in this lawsuit, she had never been disciplined because of them (or for any other reason), and, indeed, that she was promoted in the fall of 1999, *after* the date of the last memorandum. Instead, she attributes the transfer to a personality clash between herself and Ms. Iosue; she also asserts that *she asked* chief deputy public defend-

er Bob Hill to transfer her. Pl. Resp. to DSOF ¶ 7–15.[2] Construing the issue, as we must, in a light reasonably most favorable to Ms. Myles, we conclude that Ms. Myles was unaware of the memoranda at the time of her transfer from Court 6 to Court 20.

On April 17, 2000, the City posted a notice for a job opening as a senior paralegal.[3] DSOF ¶ 19. Ms. Devane and Ms. Myles both applied. The decision maker, Ms. Beehler, considered both to be qualified for the job.[4] DSOF ¶ 25. Although Ms. Myles questions whether Ms. Devane met the minimum qualifications for the job, it is undisputed that the Senior Paralegal posting required "either a paralegal degree or at least 1 year experience as a criminal litigation paralegal" DSOF ¶ 24, and that Ms. Devane had at least one year as a paralegal in criminal litigation with a law firm. DSOF ¶ 26.

Before making her selection, Ms. Beehler spoke with Carolyn Rader of Crawford & Rader, where Ms. Devane had previously worked. Ms. Rader gave Ms. Devane a ringing endorsement, calling her a self-

**2.** Ms. Iosue's memoranda are a flash point of this lawsuit. Ms. Myles objects to their admissibility on hearsay grounds. The documents are admissible, however, under the "state of mind" exception to hearsay. Fed. R.Evid. 803(3). The City says that it offers the memoranda not for their truth—that is, *not* as evidence that Ms. Myles in fact suffered from the performance problems noted in them—but as evidence of its reasons or motive for not promoting her. The City's explanation—while valid as to the immediate issue of the memoranda's admissibility to explain why it did not *transfer* Ms. Myles—raises a different problem: the City says that it intends to use the memoranda to explain why it did not *promote* Ms. Myles. For now, we simply observe that the memoranda are admissible for the purpose of showing why the City *transferred* her from Court 6 to Court 20. Later in this Entry we will address the status of these memoranda for purposes of Ms. Beehler's and Mr. Cook's decision not to *pro-*

*mote* Ms. Myles to senior paralegal, a very different issue and the central issue in this lawsuit.

**3.** The parties disagree as to whether there was one or two positions posted and the job title and requirements of either or both. It appears clear from the parties' arguments and the facts upon which they do agree, however, that both Mss. Devane and Myles were considered for the same job (whatever the title) and that Ms. Devane was selected for it. E.g. DSOF ¶ 21 and Pl. Resp. Accordingly, the controversy about the *postings* is immaterial.

**4.** Ms. Myles asserts that Mr. Cook was the decision maker, but her citation to Ms. Beehler's deposition at p. 4 fails to support that contention. It is clearly established by the evidence, however, that Ms. Beehler made the decision to select Ms. Devane and not Ms. Myles. Beehler Dep., pp. 14–15, 66; Cook Ans. to Pl. Interrog. No. 27.

starter and stating that Ms. Devane was smart and was able to work with little oversight. DSOF ¶¶ 29, 30.

By contrast, Ms. Beehler testified that Ms. Myles had a reputation around the office as being unreliable. DOSF ¶ 17. Ms. Beehler also stated that she learned from Public Defender paralegals Danielle Horton and Kim Young that Ms. Myles sometimes simply left work requests lying on her desk until the deadline on which the work was to be completed had passed. DSOF ¶ 18. Ms. Beehler also discussed Ms. Myles's job performance with Kathy Stinton–Glen, an attorney with the Public Defender agency who worked with Ms. Myles in Court 20, and that Ms. Stinton–Glen's endorsement of Myles "was less than ringing." DSOF ¶ 31.

Additionally, Ms. Beehler testified that, during her interview, Ms. Devane expressed clear knowledge of the duties she would assume and voiced several ideas for improvement of office procedures if she became senior paralegal. DSOF ¶ 32. In contrast, when asked by Ms. Beehler in her interview why she wanted the job of senior paralegal, Myles stated that she wanted the additional money the job would bring. DSOF ¶ 33. Finally, after discussions with people who had worked with both Mss. Myles and Devane, Ms. Beehler selected Ms. Devane for the senior paralegal position. DSOF ¶ 34.

After Ms. Devane was selected for the senior paralegal job, Ms. Myles left the Public Defender Agency and went to work for a private law firm. DSOF ¶¶ 38, 40.

### III. *Discussion.*

#### A. *The Standard on Summary Judgment.*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998).

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Anderson,* 477 U.S. at 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge,* 24 F.3d at 920. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi,* 123 F.3d 956, 962 (7th Cir.1997). If genuine doubts remain, and a reasonable fact-

finder could find for the party opposing the motion, summary judgment is inappropriate. See *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Waldridge*, 24 F.3d at 920.

B. *Preliminary Issues.*

Before we turn to the key issue in this lawsuit—whether Ms. Myles has produced legally sufficient evidence to raise an inference that the City discriminated against her on the basis of her race—we resolve several subsidiary issues. Ms. Myles' complaint alleges three causes of action: one for disparate treatment, a second for disparate impact, and a third for deprivation of her constitutional rights under color of state law. Her complaint names four separate defendants: the City of Indianapolis, the Marion County Public Defender Agency, David Cook (in his official and individual capacities) and Kay Beehler (in her official and individual capacities).

First, Ms. Myles has advanced the winnowing process by abandoning her disparate impact claim. Pl. Opp. Brief, p. 1. Accordingly, defendant's motion for summary judgment as to that claim is granted.

■ Second, naming Mr. Cook and Ms. Beehler in their "official capacities" is redundant because, insofar as they acted in their "official" capacities, they *are* the City (or the agency). *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *Armstrong v. Squadrito*, 152 F.3d 564, 580 (7th Cir. 1998). Accordingly, we dismiss the disparate treatment and section 1983 claims

against defendants Cook and Beehler in their official capacities.

■ Third, we dismiss the Title VII component of the claims against defendants Cook and Beehler in their "individual capacities" because Title VII does not recognize actions against individual supervisors. *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir.1998); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 244 (7th Cir.1996); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995).

■ Fourth, we also dismiss the individual capacity claims against defendants Cook and Beehler pursuant to section 1983 because such claims require individualized proof that that the named official was directly responsible for the improper conduct, *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), and that they "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986). See *McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, (7th Cir.2000). Since we find that neither Mr. Cook nor Ms. Beehler violated the law in selecting Ms. Devane for the job at issue, we also find that neither named defendant acted in a manner that satisfies the "knowingly and willfully" criteria for individual liability pursuant to section 1983.

C. *Ms. Myles' Failure–to–Promote Claim.*

■ Although we have concerns about Ms. Beehler's explanation of her selection process and the City's manner of presenting several important facts in this case, the scenario presented here is ultimately governed by *Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir.2002), which all but mandates a judgment in the City's favor as a matter of law. *Millbrook* stands for the proposition that a failure-to-promote claim which

is based on the employer's comparison of the plaintiff's credentials and the credentials of another candidate is doomed to defeat, unless the plaintiff can show that her credentials are so superior to those of the person eventually selected as to render the promotion decision unfathomable unless the decision maker resorted to some criterion outside of the candidates' respective credentials. In *Millbrook*, the Seventh Circuit reversed a jury verdict which found race discrimination in a failure-to-promote case. Following the rulings of five other circuit courts, the Seventh Circuit held that:

> [W]here an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext "unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." In other words, "[i]n effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.' "

*Id.* at 1180–1181(internal citations omitted). In light of *Millbrook*, it appears that the only way a plaintiff may prevail on a failure-to-promote claim which is based on the comparative credentials of the candidates is to present "additional evidence of discrimination." *Id.* at 1179.

In the present case, Ms. Myles has presented evidence showing that the City selected one qualified applicant (Ms. Devane) in preference to another (herself). Although the City's explanation of its selection of Ms. Devane is based on the slenderest sort of subjective criteria and on a misleading statement of pertinent facts, Ms. Myles presents no "additional evidence of discrimination." Accordingly, while this case tests the limits of the "honest belief" defense in employment discrimination cases, we are constrained to follow the direction set forth in *Millbrook*.

At the heart of this lawsuit is the City's acknowledgment that both Mss. Devane and Myles were qualified for the senior paralegal position and that Ms. Beehler selected Ms. Devane. As Ms. Beehler put it in her deposition: "I didn't make the determination that Michelle Myles was not qualified. I made a determination that Amber Devane was better." Beehler Dep., p. 66. In other words, Ms. Beehler explains her selection of Ms. Devane over Ms. Myles because she honestly believed that Ms. Devane was the better choice. However, even if we could find that Ms. Myles was the superior candidate—about which we express no opinion—no jury could reasonably find that Ms. Myles's superiority over Ms. Devane was "so apparent as to virtually jump off the page and slap you in the face." *Millbrook*, 280 F.3d at 1179, *quoting Deines v. Texas Dept. of Protective and Regulatory Services*, 164 F.3d 277 (5th Cir.1999). Accordingly, we cannot say that Ms. Myles has presented sufficient evidence to raise an inference of pretext.[5]

---

5. Since the City has offered legitimate, nondiscriminatory reasons for its selection of Ms. Devane, we bypass the *prima facie* aspect of the burden-shifting analysis and proceed directly to the pretext element. *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 470 (7th Cir. 2000); *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir.1998) ("When the defendant has proffered an explanation for termination that the court determines to be non-pretextual, the court may avoid deciding whether the plaintiff has met his prima facie case and instead decide to dismiss the claim because there is no showing of pretext.").

Ms. Beehler says that she based her selection on three factors: Ms. Myles' problems when she worked in Court 6; her reputation for poor work habits, as expressed by her fellow paralegals and by attorney Kathy Stinton–Glen, with whom Ms Myles worked in Court 20; and Ms. Myles' statement that she wanted the job because it paid more than her then-current position. At bottom, Ms. Beehler appears to have relied most strongly on Ms. Myles' "reputation" for unreliability and being unavailable. While we regard Ms. Beehler's inquiry into the relative merits of the two candidates to have been perfunctory and less rigorous than citizens should perhaps expect of supervising lawyers in the legal department of a major city, we cannot say that Ms. Beehler's explanation was pretextual.

We have doubts as to Ms. Beehler's first explanation, because a review of the record undermines the City's repeated assertion that Ms. Beehler relied on the Iosue memoranda—which detailed deficiencies in Ms. Myles's work performance—in selecting Ms. Devane over Ms. Myles. For example, defendant repeatedly recites: "In fact, when asked in deposition if before making her decision she looked at the memos written by Laura Iosue, Beehler answered, 'correct.' (Beehler Deposition, p. 53, ln. 9)." DSOF ¶¶ 9, 10, 11, 12, 13, 14, 15.

The record is far less clear than defendants' assertion would lead one to believe. After Ms. Beehler testified that she did not review Ms. Myles' personnel file or the evaluations in her file before she interviewed her, she testified:

Q: "But you did look at the memos written by Laura Iosue—"

A: "Correct."

Q: "—that were contained in the personnel file?"

A: "*No.* Those were in the files in my office when I took over from Bob Hill and started managing the major felony folks. Those were in Michelle's file."

Beehler dep. p. 52 (emphasis added).

This confusing colloquy clarifies only *where* the memoranda were kept: in files maintained by Bob Hill outside Ms. Myles' personnel files. The question of *when* Ms. Beehler looked at the Iosue memoranda remains unclear.

Q: "And you indicated that you had not looked at the evaluations in her file regarding her prior work experience at the time that you were interviewing her, is that correct?"

A: "Correct."

Q: "But you did look at some memos written about her from Laura—or authored by Laura Iosue?"

A: "Iosue."

Q: "Correct?"

A: "I don't—what are the dates on the memo?"

Q: "April—there's several, April 21, 1999, August 13, 1999, July 30, 1999."

A: *"Then I would not have looked at those, no."*

After some additional attempts at clarification, Ms. Beehler testified as follows:

Q: "Did you review those memos at that time written by Laura Iosue?"

A: *"Probably. I had probably seen them earlier. Because I think I went through all those files when I came into that office."*

Beehler Dep., 57 (emphases added).

Contrary to the City's assertion of fact, we too are left with a resounding "probably" in answer to the question of whether Ms. Beehler relied on Ms. Iosue's memoranda criticizing Ms. Myles's work performance in arriving at her decision to select Ms. Devane for the senior paralegal position. If Ms. Iosue's memoranda had been the only basis for Ms. Beehler's explana-

tion as to why she selected Ms. Devane over Ms. Myles, we would deny the City's motion for summary judgment, since Ms. Beehler's testimony on that issue must be resolved in favor of Ms. Myles.[6]

Ms. Beehler, however, also testified that she worked at the Agency with Ms. Iosue and had had conversations with Ms. Iosue at the time some of the incidents referenced in the memos occurred. Beehler Dep., 64. She also testified that, on at least one occasion, she overheard Ms. Iosue "railing" furiously about Ms. Myles's failure to insure that certain out-of-state witnesses were present as needed. Beehler Dep., 55–56.

Similarly, it is uncontested that Ms. Beehler spoke with several of Ms. Myles's colleagues and with attorney Kathy Stinton–Glen about Ms. Myles's work performance and that Ms. Beehler found their support tepid at best. In contrast, it is undisputed Ms. Beehler interviewed several other people, including Ms. Rader, who gave Ms. Devane a glowing review.

■ We might wish in retrospect that a supervising attorney for the Public Defender's office had reviewed Ms. Myles's personnel file and prior evaluations before selecting Ms. Devane for the position. PSAF ¶¶ 47, 49. Similarly, we might hope that a high-level attorney with decision-making authority as to employment matters would not risk importing the prejudices of others by relying almost exclusively on word-of-mouth in making a hiring decision.[7] This leads to the kind of subjective decision making that may mask discrimination and raise an eye-brow as to the employer's motive.[8] But we cannot say that Ms. Beehler's explanations for selecting Ms. Devane are pretextual, because, granting each the requisite element of suspicion, they give rise to no reasonable inference of discrimination.

## IV. Conclusion

For the reasons addressed, we conclude that Ms. Myles has presented legally insufficient evidence to raise a reasonable inference that the City discriminated against her on the basis of race in selecting Ms. Devane over her for the position of senior paralegal. Accordingly, having granted defendants' motion with respect to the named individuals' official capacity and in-

---

6. We are also troubled by the City's assertion of fact that the Iosue memoranda appeared in Ms. Myles's personnel file and that Ms. Myles had seen them at the time they were written. DSOF ¶ 16. The City cites Ms. Myles's deposition p. 30 lines 22–25 to establish that Ms. Myles saw the Iosue memoranda "at the time they were written." But the cited testimony shows that Ms. Myles was asked: "Have you seen these *prior to today?*" (Emphasis added.) To which Ms. Myles responded: "Yes." We need hardly emphasize that "prior to today" (the day of her deposition) is not the same as "when they were written." Ms. Myles denies that she ever saw them before this litigation, an issue which must be resolved in her favor. And it is now obvious from Ms. Beehler's testimony that the memoranda were *not* maintained in Ms. Myles's personnel file. Although we look to the record when there are material issues that appear to be disputed, our confidence in counsel

who misstate the record is seriously eroded, particularly on potentially outcome determinative facts.

7. For reasons already discussed in this entry, Ms. Myles's objections to the admissibility of all of Ms. Beehler's word-of-mouth, reputation evidence must be overruled. The comments made to Ms. Beehler by others would be inadmissible hearsay if the City were offering them to show that Ms. Myles shirked responsibility and was frequently unavailable for work. But the City offers the comments to show that this is what Ms. Beehler believed and that Ms. Beehler acted on her belief. It is admissible for that purpose.

8. We note that the Seventh Circuit once again addressed subjective decision making in *Millbrook*, 280 F.3d at 1176, where it reiterated that it is not per se unlawful.

dividual capacity claims, and to plaintiff's section 1983 claim, and her disparate impact claim, we GRANT defendants' motion in its entirety.