**Janice L. NORDWALL, Plaintiff–Appellant,**

v.

**SEARS ROEBUCK & CO., Defendant–Appellee.**

No. 01–1691.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 2001.

Decided Sept. 6, 2002.

Before COFFEY, ROVNER, EVANS, Circuit Judges.

### ORDER

Janice Nordwall ("Nordwall"), who has diabetes, sued her employer, Sears Roe-

buck & Co. ("Sears") alleging that she was disabled as defined by the Americans with Disabilities Act ("ADA") and that Sears had discriminated against her because of her medical condition. Sears filed for summary judgment on the issue of whether Nordwall could proceed under the ADA, arguing that she is not a qualified individual with a disability because she is not substantially limited in a major life activity. The district court granted Sears' motion. Nordwall appeals the entry of summary judgment. We affirm.

## I.

Nordwall was diagnosed with Type I diabetes when she was about four years old and has controlled this disease with insulin since that time. R. 15 ¶ 11; R. 18 Response ¶ 11. She injects insulin twice daily (R. 18 Pl. Add'l Facts ¶ 1), checks her blood sugar often and, when necessary, modifies her blood sugar by having milk, juice, or some other food or drink, by injecting additional insulin, and/or modifying her activities (R. 15 ¶¶ 15 –17; R. 18 Response ¶¶ 15–17; R. 18 Pl. Add'l Facts ¶¶ 2–3). For the last twenty years, Nordwall has relied on the supervision of Mark Heymann, M.D. ("Dr. Heymann"), a specialist in diabetes, to help her control her illness. R. 15 ¶¶ 13, 67; R. 18 Response ¶¶ 13, 67. According to Dr. Heymann, besides having diabetic complications during her pregnancy (*see* R. 18 Pl. Add'l Facts ¶ 44), along with mild background retinopathy (*see* R. 15 ¶¶ 70, 82–89; R. 18 Response ¶¶ 70, 82–89; R. 18 Pl. Add'l Facts ¶ 34), Nordwall has experienced no severe diabetic complications. R. 15 ¶¶ 69, 75; R. 18 Response ¶¶ 69, 75. Heymann testified that he has never restricted her from performing any task, nor does he believe that her illness limits any of her life activities. R. 15 ¶¶ 71, 73, 90–91; R. 18 Response ¶¶ 71, 73, 90–91. Nordwall did testify that since her son was born in 1994, she often

has bouts of dizziness and lightheadedness when her blood sugar changes (R. 18 Pl. Add'l Facts ¶¶ 32, 49, 63, 76), but that she can overcome the spells quickly, R. 14 at 384–85. Additionally, twice during 1994, and on three occasions since that time, Nordwall has also experienced what she describes as "blackouts". R. 18 Pl. Add'l Facts ¶¶ 16, 18, 36. She does not literally faint during these episodes—in fact, she looks normal—but rather is dazed and unaware of her surroundings. R. 14 at 126, 484. She can sometimes catch herself before "blacking out" and eat a candy bar to head off the episode. R. 18 Pl. Add'l facts ¶ 37.

Nordwall worked as a full-time employee for Sears in its corporate headquarters beginning in 1979, performing a wide variety of jobs. R. 15 ¶¶ 21–22; R. 18 Response ¶¶ 21–22. From 1992 until her termination in 1998, she worked as an administrative assistant. R. 15 ¶ 23; R. 18 Response ¶ 23. In January of 1996, Don Zimmerman ("Zimmerman") became Nordwall's direct supervisor. R. 15 ¶ 25; R. 18 Response ¶ 25. Shortly thereafter, Zimmerman informed Nordwall that in addition to her existing responsibilities, she would be responsible for providing administrative support to the thirty-four or thirty-five new employees he intended to hire R. 18 Pl. Add'l Facts ¶¶ 55, 60. These duties were to include arranging appointments, managing calls, setting up offices, and making sure the new hires had all the proper equipment and whatever else they needed. R. 18 Pl. Add'l Facts ¶ 60; R. 27 ¶ 60. Ultimately under Zimmerman, Nordwall worked for seventy people. R. 18 Pl. Add'l Facts ¶ 55. As her responsibilities broadened, Nordwall found it more difficult to structure her work day. R. 18 Pl. Add'l Facts ¶¶ 61–63. She stopped taking a break for lunch, ate at her desk, and found she did not have

the time or the energy to exercise. R. 18 Pl. Add'l Facts ¶ 66. She also found it more difficult to manage her blood sugar level. Increasingly, she experienced periods of weakness and light-headedness. R. 18 Pl. Add'l Facts ¶ 63. At times, Nordwall later testified, she felt as though she was "running to the candy machine constantly because [her] blood sugars were ... going down." R. 14 at 327; R. 18 Pl. Add'l Facts ¶ 63. In June 1997, Timothy Joos ("Joos") replaced Zimmerman as Nordwall's supervisor. R. 15 ¶ 36; R. 18 Response ¶ 36. The number of people to whom she was providing administrative support continued to increase, and in certain respects her duties continued to grow as well. R. 15 ¶¶ 37–38; R. 18 Response ¶¶ 37–38; R. 18 Pl. Add'l Facts ¶ 74. In the course of her work for Joos, Nordwall's episodes of dizziness and lightheadedness became nearly a daily occurrence. R. 18 Pl. Add'l Facts ¶ 76; R. 27 ¶ 76.

For the period beginning January 1997 and ending in June of that year, Nordwall received an overall average of 1.63 points out of a possible score of 5.0 on her midyear performance evaluation, a rating indicating that she was only meeting some of her employer's expectations. R. 14, Nordwall Dep. Ex. 22; see also R. 15 ¶ 45; R. 18 Response ¶ 45. By the time she received this evaluation in September 1997, Nordwall had begun working for Joos. Having concluded that her increased workload and the resulting stress was making it more difficult for her to manage her diabetes and was adversely affecting her health, Nordwall met with Joos on more than one occasion to advise him of the difficulty she was experiencing and to request some type of modification to her responsibilities. R. 18 Pl. Add'l Facts ¶¶ 77–81, 84. Joos never responded to her request for an accommodation. R. 18 Pl. Add'l Facts ¶ 80. Instead, Nordwall was told that she should look for a different position within Sears.

R. 18 Pl. Add'l Facts ¶ 86. Heeding this admonishment, Nordwall applied and interviewed for roughly twenty-four jobs. R. 15 ¶ 47; R. 18 Response ¶ 47. Although Nordwall testified that she believed she could do all of the jobs for which she applied (see R. 30 ¶ 2c, correcting R. 15 ¶ 48), she was offered none of them. Sears offered Nordwall a temporary position, which she accepted. R. 15 ¶ 49, R. 18 Response ¶ 49. Once that position expired in March 1998, Sears terminated Nordwall with seven weeks severance pay and outplacement assistance. R. 15 ¶ 50; R. 18 Response ¶ 50.

## II.

We review the granting of summary judgment by the district court de novo. See, e.g. Nawrot v. CPC Int'l, 277 F.3d 896, 902–03 (7th Cir.2002). We must view the evidence in the light most favorable to Nordwall, the non-moving party, and must make all reasonable, justifiable inferences in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). We must affirm the district court unless Nordwall proves the existence of a genuine issue of material fact. See Fed.R.Civ.P. 56(c). However, Nordwall cannot prevail on a mere scintilla of evidence; she needs definite, competent proof to rebut a motion for summary judgment. See, e.g., Millbrook v. IBP, Inc., 280 F.3d 1169, 1173 (7th Cir.2002), petition for cert. filed, 71 U.S.L.W. 3116 (July 18, 2002) (No. 02–120).

Nordwall must prove that she is disabled within the meaning of the ADA. To do so, she must prove that (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) that she has a record of such an impairment; or (3) that she is

regarded as having such an impairment. 42 U.S.C. § 12102(2). Nordwall alleges that because of the effects of her diabetes, she is substantially limited in the major life activities of working and caring for herself.

The Supreme Court has dictated a three-part test to determine whether a plaintiff has shown that she is substantially limited in a major life activity: (1) whether the condition alleged constitutes a physical or mental impairment; (2) whether that impairment affects a major life activity; and (3) whether the impairment operates as a substantial limit on the major life activity asserted. *Bragdon v. Abbott,* 524 U.S. 624, 632–42, 118 S.Ct. 2196, 2202–07, 141 L.Ed.2d 540 (1998). When applying this test, the Supreme Court has also instructed that courts may consider only the limitations of an individual that persist after taking into account mitigating measures (in this case, insulin injections) and the negative side effects of the measures used to mitigate the impairment. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482–83, 119 S.Ct. 2139, 2146–47, 144 L.Ed.2d 450 (1999).

We have no difficulty in determining that Nordwall's Type I diabetes is a physical impairment under the Act. *See Nawrot,* 277 F.3d at 903–04; *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 923 (7th Cir. 2001). Additionally, both working and caring for oneself are activities that are central to the importance of most people's daily lives and both have been presumed to be major life activities by this Court for the purpose of this analysis. *See Nawrot,* 277 F.3d at 905 (caring for oneself); *E.E.O.C. v. Rockwell Int'l Corp.,* 243 F.3d 1012, 1017 (7th Cir.2001) (working); *cf.* 45 C.F.R. § 84.3(j)(2)(ii). Nordwall's argument that her mitigated illness substantially limits her in these activities, however, is unpersuasive on the record before us.

Nordwall would have this Court find that her diabetes limits her in the major life activity of working, but she has provided no evidence that she was "precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton,* 527 U.S at 492, 119 S.Ct. at 2151. Not only had Nordwall, all the while suffering from Type I diabetes, performed her job at Sears successfully for many years, she also testified that she felt she was qualified for the approximately twenty-four other jobs at Sears that she sought prior to her termination.

Q: At the time that you applied for those positions, there was nothing in those positions that you applied for ... which you believe that your diabetic, your insulin diabetic condition interdicted you from doing; is that correct?

. . .

A: Right. As far as I could tell. As far as the job description.

R. 14 at 479–80.

Simply put, "if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Sutton,* 527 U.S. at 492, 119 S.Ct. at 2151. From the evidence before us, it would appear that Nordwall is only unable to perform her job because of her diabetes when it becomes highly stressful. The inability to handle a sizeable workload or a stressful workplace environment does not establish a substantial limitation on a plaintiff's ability to work for purposes of the ADA.

Similarly, the evidence does not present a fact question as to whether Nordwall is substantially limited in the major life activity of caring for herself. It is undisputed that Nordwall feeds herself, attends to her personal hygiene, maintains her household,[1] drives, cares for her son and hus-

---

1. Nordwall does indicate that she does her    housework slowly, working "for maybe an

band, exercises, and carries out many other routine activities. R. 15 ¶¶ 18–19; R. 18 Response ¶¶ 18–19; R. 14 at 19–21, 23–26. The only evidence that she is limited in the ability to care for herself comes from the testimony regarding episodes of dizziness and lightheadedness and her infrequent "blackouts." R. 18 Pl. Add'l Facts ¶¶ 16–18, 32, 49, 63, 76. We can readily appreciate that during the "blackouts," and to a lesser extent during bouts of lightheadedness or dizziness (many of which appeared to have been triggered by the stress of her work for Zimmerman and Joos), Nordwall might well be unable to engage in any number of life activities. However, the Supreme Court's recent opinion in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002), indicates that an impairment must prevent or severely limit the plaintiff's ability to engage in the life activity at issue—here, caring for oneself—in order to be deemed substantially limiting. "The impairment's impact must also be permanent or long-term." *Id.*, citing 29 C.F.R. §§ 1630.2(j)(2)(ii)-(iii) (2001). So far as the record reveals, neither Nordwall's "blackouts," her bouts of dizziness or lightheadedness, nor any other aspect of her diabetes prevent or severely restrict her ability to care for herself. Evidently, she is able to attend to all aspects of not only her own care, but her family's as well. To the extent that she is incapacitated during blackouts or periods of lightheadedness, the record does not reveal the incapacitation to be anything more than fleeting, and Nordwall has identified no aspect of her own care that she cannot handle on a regular basis due to these episodes. She

points out, for example, that she once experienced a blackout while driving her car (R. 18 Pl. Add'l Facts ¶ 18); and yet, the record reflects no restrictions on her driver's license other than the need to wear eyeglasses (R. 14 at 26) and there is no evidence that Nordwall has stopped driving[2] or curtailed any other aspect of her daily activities in anticipation of such episodes. Again, we do not mean to be obtuse. It is easy to imagine ways in which such episodes, if severe and/or frequent enough, might impose substantial limitations on the person who experiences them. But there is no evidence that Nordwall's periods of altered consciousness in fact have this effect. In the absence of such evidence, we simply cannot assume that such moments impose substantial limitations on Nordwall's ability to care for herself. *See Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 402 (7th Cir.1998) ("our obligation to examine the record in a light favorable to the nonmovant 'extends no further than the record before us' "), quoting *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 505 (7th Cir.1998).

### III.

Viewing the record most favorably to Nordwall, we cannot find that there exists a genuine issue of whether Nordwall is substantially limited in the major life activities of working or caring for herself. Consequently, the order of the district court is AFFIRMED.

---

hour at a time" and then taking a break to rest. R. 18 Pl. Add'l Facts ¶ 71.

**2.** Nordwall did note in her deposition testimony that she limits her driving to within five miles of her home. R. 14 at 26–27. Yet,

Nordwall does not suggest that driving is an aspect of caring for oneself, nor does she argue that the limit she has imposed on her driving amounts to a substantial limitation on her mobility or any other aspect of her life.