Melvin D. **REED**, Plaintiff–Appellant,

v.

**LAWRENCE CHEVROLET, INC. and Falls Chevrolet, Inc. Defendants–Appellees.**

No. 00–3933.

United States Court of Appeals, Seventh Circuit.

Submitted July 23, 2001.*

Decided July 23, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before BAUER, COFFEY, WILLIAMS, Circuit Judges.

## ORDER

Melvin Reed sued under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, alleging that Lawrence Chevrolet, Inc. ("Lawrence Chevrolet"), a car and truck dealership in Menomonee Falls, Wisconsin, failed to hire him on several occasions because he is African–American. Reed also alleged that Falls Chevrolet, Inc. ("Falls Chevrolet"), which subsequently acquired Lawrence Chevrolet's assets, purchased Lawrence Chevrolet's liabilities and therefore is liable as a successor corporation. The district court granted summary judgment for Defendants, concluding that Reed's Title VII claims were partially time-barred, that Reed presented no evidence that Lawrence Chevrolet's proffered reasons for not hiring him were pretextual, and that Falls Chevrolet was not liable as a successor. Reed appeals, and we affirm in part and reverse in part.

Reed alleges that on five separate occasions between 1996 and March 1998, he applied for jobs at Lawrence Chevrolet as a salesperson and finance manager. Lawrence Chevrolet acknowledges that Reed applied to be a finance manager in August 1997 and a salesperson in March 1998, but denies that Reed filed any other applications. Lawrence Chevrolet never hired Reed. After rejecting Reed's August 1997 application, Larry Malinowski, Lawrence Chevrolet's sole shareholder, hired a Caucasian, Jackie Lefco, as finance manager. Malinowski testified by affidavit that Lefco had several years of finance experience and that he believed she was more qualified. As for the March 1998 application, sales manager Pete Steinhauer testified by affidavit that he did not hire Reed because (1) he wanted a long-term salesperson and Reed told him that his long term interest was in finance and not sales, and (2) Reed had lengthy gaps in his employment history. Lawrence Chevrolet filled the open sales positions with Caucasians. Reed claims that he became suspicious of Lawrence Chevrolet's explanations for not hiring him when he observed an all-Caucasian workforce at Lawrence Chevrolet on unspecified dates during his visits to its offices in connection with his applications.

In April 1998 Reed filed a discrimination charge against Lawrence Chevrolet with the Equal Rights Division of the Wisconsin Department of Workforce Development ("ERD") and the Equal Employment Opportunity Commission ("EEOC"). In November 1998 the ERD concluded that no probable cause existed to believe that Lawrence Chevrolet had discriminated against Reed on the basis of his race. Reed requested a notice of right to sue, which the EEOC issued in June 1999.

Soon after the ERD made its probable cause finding, in December 1998, Lawrence Chevrolet sold all of its assets to Falls Chevrolet.

Reed filed this federal lawsuit in August 1999. Defendants answered in November 1999. In January 2000, before the parties had conducted any discovery other than the exchange of initial disclosures under Federal Rule of Civil Procedure 26(a)(1) (the district court never issued a discovery schedule), Defendants moved for summary

judgment. The motion was supported by the affidavits of Steinhauer and Malinowski. Malinowski asserted that Lawrence Chevrolet did not hire Reed in 1997 because of his lack of experience. Steinhauer asserted that Lawrence Chevrolet did not hire Reed in 1998 because he had no long-term interest in sales and had lengthy gaps in his employment history. Defendants argued that Reed's claims arising out of Lawrence Chevrolet's failure to hire him in 1996 were time-barred, that Reed could not demonstrate pretext, and that Falls Chevrolet was not a successor as a matter of law. Five days after Defendants moved for summary judgment, the district court stayed all proceedings on the basis that Reed's filing of a bankruptcy petition divested him of standing to pursue his claims on his own behalf. Reed's bankruptcy petition subsequently was dismissed, and the court lifted the stay in May 2000.

Ten days later, Reed moved under Federal Rule of Civil Procedure 56(f) to stay the summary judgment proceedings for 120 days in order to conduct discovery on the issues of pretext and Falls Chevrolet's liability as a successor. Reed submitted supporting affidavits from his attorney that detailed the discovery which he contended was necessary to demonstrate that Lawrence Chevrolet's proffered reasons for not hiring him were pretextual and that Falls Chevrolet was liable as a successor. Reed also responded to Defendants' limitations argument by asserting that his claims arising out of Lawrence Chevrolet's failure to hire him in 1996 were timely as part of a continuing violation.

In June 2000 the district court denied the Rule 56(f) motion, concluding that "[i]n some cases, including this one, an early motion for summary judgment is entirely appropriate," and that "a substantial factual record" was developed before the ERD. The court added that discovery was not necessary regarding the question of Falls Chevrolet's successorship because that question could be decided as a matter of law.

In September 2000 the district court granted summary judgment for Defendants. The court first concluded that Reed's Title VII claims arising out of the 1996 failure to hire were time-barred because they were based on conduct that occurred more than 300 days before Reed filed his discrimination charge with the ERD. The court rejected Reed's continuing violation argument, reasoning that Reed failed to present evidence as to why he should not have been aware of the allegedly discriminatory nature of Lawrence Chevrolet's failure to hire him when it occurred in 1996. In any event, the court concluded that Reed could not sustain his Title VII and § 1981 claims because he failed to present any evidence that Lawrence Chevrolet's articulated reasons for not hiring him in 1997 and in 1998 were pretextual. Finally, the district court found that Falls Chevrolet did not succeed to Lawrence Chevrolet's liability under Wisconsin law because Falls Chevrolet's business was not a "mere continuation" of Lawrence Chevrolet's business without evidence of any identity of ownership and control between the two companies.

On appeal Reed contends (1) that the district court erred in rejecting his continuing violation argument and thus in finding that his claims were time-barred, (2) that the district court erred in denying his Rule 56(f) motion, (3) that the district court erred in finding that Falls Chevrolet was not liable as a successor, and (4) that Judge Randa was unfairly biased against Reed and should have recused himself. Our review is de novo, and we evaluate the record in the light most favorable to Reed, drawing all reasonable inferences in his

favor. *Jordan v. Summers*, 205 F.3d 337, 341 (7th Cir.2000). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### I. Statute Of Limitations And Continuing Violation Theory.

■ Under the continuing violation theory, a plaintiff may obtain relief for a time-barred act by linking it with an act that is within the limitations period. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir.2000). We have recognized three types of a continuing violation: (1) where the employer's decision-making process takes place over time making it difficult to pinpoint the date of the violation; (2) where the employer has a systematic and open policy of discriminatory conduct; and (3) where the conduct is so "covert" that its discriminatory character is not immediately apparent. *Place v. Abbott Labs.*, 215 F.3d 803, 808 (7th Cir. 2000), *cert. denied*, 531 U.S. 1074, 121 S.Ct. 768, 148 L.Ed.2d 668 (2001). But the continuing violation doctrine does not apply where a time-barred incident cannot be linked with a timely incident, or where the time-barred incident alone should have triggered the plaintiff's awareness of his rights. *See Simpson v. Borg–Warner Automotive, Inc.*, 196 F.3d 873, 875 n. 1 (7th Cir.1999).

■ Reed asserts that none of his claims should be time-barred because he "had no way of knowing" that he had been the victim of discrimination until the evidence began to "pile up." Specifically, Reed claims that he first became suspicious after Lawrence Chevrolet rejected his application for the fifth time in early 1998 when he visited the dealership and saw an all-Caucasian workforce. But the record contains no evidence linking Lawrence Chevrolet's failure to hire Reed in 1996 with subsequent failures to hire; the decisions were not temporally related and did not involve the same decision-maker. *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 807 n. 8 (7th Cir.1999), *cert. denied*, 530 U.S. 1204, 120 S.Ct. 2197, 147 L.Ed.2d 233 (2000). Additionally, Reed offers no explanation why the absence of African–Americans at Lawrence Chevrolet did not strike him as "suspicious" sooner. Lawrence Chevrolet's failure to hire Reed in 1996 was a "concrete, discrete development," actionable without repetition. *See Place*, 215 F.3d at 808. Reed's Title VII claims arising out of conduct that occurred more than 300 days before Reed filed his discrimination charge (*i.e.*, before July 31, 1997) are time-barred. We thus will consider only his claims arising out of Lawrence Chevrolet's failures to hire him in August 1997 and March 1998.

### II. Denial Of Rule 56(f) Motion.

■ Reed contends that the district court erred in denying his Rule 56(f) motion because, during the ERD proceedings, Reed could not obtain all of the factual information he needed from Defendants in order to respond to their summary judgment motion. Thus, Reed says, the district court should have granted him additional time to take discovery. Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

We will reverse the district court's denial of a Rule 56(f) motion only when the district court has abused its discretion, resulting in actual and substantial prejudice to the party seeking additional discovery. *See Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049 (7th Cir.2000); *Huff v. Dobbins, Fraker, Tennant, Joy & Perlstein*, 243 F.3d 1086, 1091–92 (7th Cir.2001). Under Rule 56(f), a party must file an affidavit stating the reasons why he cannot respond to a summary judgment movant's affidavits. *Kalis*, 231 F.3d at 1058 at n. 5. The reasons must demonstrate clearly the justification for a continuance. *Id.* Additionally, the party must file his Rule 56(f) motion expeditiously. *Id.* When a party's own lack of diligence is to blame for that party's failure to secure discoverable information, it is not an abuse of discretion to deny a Rule 56(f) motion. *Id.*

A. The Adequacy Of Reed's Rule 56(f) Motion.

■ Reed's Rule 56(f) motion met the requirements set forth above. Reed filed his motion expeditiously because he did so at his first opportunity—immediately after the district court lifted the bankruptcy stay on all proceedings. His counsel's affidavits clearly explained what discovery was necessary in order for Reed to respond to the summary judgment motion on the issues of pretext and successor liability. Specifically, the affidavit stated that Reed needed to take (1) the depositions of key witnesses (such as Steinhauer and Malinowski) that Defendants had identified in their Rule 26(a)(1) disclosures, (2) written discovery regarding Lawrence Chevrolet's hiring practices, employees, and unsuccessful applicants in order to compare Reed's treatment with that of others, and (3) discovery regarding the circumstances surrounding Falls Chevrolet's acquisition.

The affidavits also clearly stated the reason why Reed had not been able to obtain the information he sought during the ERD proceedings: "Lawrence Chevrolet repeatedly asserted before the [ERD] that it could not answer our discovery requests because the dealership had been sold to Defendant Falls Chevrolet, which was not a party to the [ERD] proceeding." During the ERD proceedings, Reed served Lawrence Chevrolet with discovery requests seeking, among other things, information about Lawrence Chevrolet's hiring practices (*e.g.*, the advertising of open positions, the identity of decision-makers, job descriptions, equal opportunity and affirmative action policies, etc.), information about Lawrence Chevrolet's current and former employees in finance and sales, and information about unsuccessful applicants. All of Lawrence Chevrolet's responses were prefaced with a qualifier: "Respondent dealership was sold in December 1998. All answers set forth herein relate to the period up to that sale, at which point Respondent stopped doing business." Additionally, Lawrence Chevrolet responded that it could not provide complete information about its employees and applicants because Falls Chevrolet had the records containing the information in its possession:

*INTERROGATORY NO. 6:* State the names of the people who were hired by the Respondent and held the positions of salesperson, finance and assistant finance manager since January 1997. Include:

 a. Race of each person;

 b. Length of employment;

 c. Promotion (if any);

 d. Reason for their separation.

*ANSWER:* Objection. This Interrogatory is overbroad and responding to it is unduly burdensome. Further, due to the sale of Respondent's dealership in $^{12}\!/_{98}$, Respondent no longer has records enabling it to respond to this Interrogatory. [Lawrence Chevrolet then provid-

ed some limited information in response to the interrogatory].

*[DOCUMENT] REQUEST NO. 4:* Produce a copy of all applications of all of the people hired by the Respondent (including their race) for the position of salesperson, finance manager and assistant finance manager since January 1996 to the present.

*RESPONSE:* Due to the sale of Respondent's sale of Respondent's dealership, no additional applications beyond those attached as Exhibit 1 can be retrieved.

Falls Chevrolet was not a party to the ERD proceedings because Falls Chevrolet did not acquire Lawrence Chevrolet's assets until December 1998, more than seven months after Reed filed his discrimination charge. In short, Reed made diligent efforts to obtain the information he believed he needed, but those efforts were thwarted through no fault of his own.[1]

B. Prejudice To Reed As A Result Of The District Court's Denial.

1. Pretext.

 The district court's denial of Reed's Rule 56(f) motion resulted in substantial prejudice to him because it deprived him of the ability to obtain the information he needed to demonstrate pretext. To stave off summary judgment on the pretext[2] issue, Reed had to present evidence that the reasons Malinowski and Steinhauer gave for not hiring him were phony and that Malinowski and Steinhauer did not honestly believe them. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 983 (7th Cir.2001); *Wolf v. Buss Am., Inc.,* 77 F.3d 914, 919–20 (7th Cir.1996). We do not think Reed reasonably could be expected to challenge the sincerity of Steinhauer's and Malinowski's proffered reasons (*i.e.,* lack of experience, no long-term interest in sales, gaps in Reed's employment record) without having, at least, the opportunity to conduct discovery regarding whether Lawrence Chevrolet applied the same standards to Caucasian applicants. For example, Lawrence Chevrolet could not produce complete information about how long its salespeople held their positions or whether they were transferred or promoted; Reed needed that information to challenge Lawrence Chevrolet's claim that it wanted to hire only those with a long-term interest in sales. Likewise, Lawrence Chevrolet could not produce all of the job applications it had received, which Reed needed to challenge Lawrence Chevrolet's assertion that it did not want to hire persons with spotty employment records. And without the applications, Reed also could not investigate whether Lawrence Chevrolet routinely refused to hire African–Americans and, if so, what Lawrence Chevrolet's claimed reasons would be for each decision. The district court should have granted Reed's 56(f) motion and allowed him time to conduct additional discovery on the issue of pretext.

---

1. We recognize that the ERD's procedural instruments for factfinding can in some contexts substitute for federal discovery procedures. *See Waid v. Merrill Area Pub. Schools,* 91 F.3d 857, 866–67 (7th Cir.1996). Defendants here, however, do not dispute Reed's assertions that he never had a fair opportunity to utilize the ERD's procedures (*i.e.,* interrogatories, document requests, and depositions) as to Falls Chevrolet.

2. The familiar *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework requires a three-part inquiry: (1) the claimant must establish a *prima facie* case of discrimination; (2) the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the claimant must prove that the employer's proffered reason is a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 802–04. The same framework governs § 1981 claims. *See Vakharia,* 190 F.3d at 806.

## 2. Successor Liability.

 Reed was similarly prejudiced as to the issue of Falls Chevrolet's liability as a successor. At the outset, we note that the district court applied the wrong legal standard—one based on Wisconsin law—in determining that Falls Chevrolet does not succeed to Lawrence Chevrolet's liability. When a claim involves federal rights such as those enumerated by Title VII and § 1981 the federal common law doctrine of successor liability governs. *See, e.g., EEOC v. G–K–G, Inc.,* 39 F.3d 740, 747–48 (7th Cir.1994); *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228, 1235–36 (7th Cir.1986) (citing cases). Under the federal successor doctrine, a plaintiff may sue a purchaser of the assets of the violator-business if (1) the successor had notice of the plaintiff's claim before acquisition, and (2) there was a substantial continuity in the operation of the business before and after the sale. *See G–K–G, Inc.,* 39 F.3d at 748.

 Our review of the record leaves crucial questions unanswered. The record is devoid of evidence as to whether Falls Chevrolet had notice of Reed's claim—a more-than-remote possibility considering that Reed filed his administrative claim more than seven months before Falls Chevrolet acquired Lawrence Chevrolet's assets. So too must we wonder whether Reed can meet the substantial continuity requirement. Contrary to Defendants' suggestion, continuity in this context is not only a question of an identity of officers, directors and shareholders; it also is an "amalgamation of a number of indicia," including whether the post-sale business (1) uses the same location, workforce, and supervisors; (2) maintains the same jobs under substantially the same working conditions; (3) uses the same machinery, equipment, and methods of production, and (4) provides the same products and services. *See Wheeler,* 794 F.2d at 1236 n. 7 (citation omitted); *see also G–K–G, Inc.,*

39 F.3d at 748 (applying indicia); *Steinbach v. Hubbard,* 51 F.3d 843, 846 (9th Cir.1995) (same). Defendants alone possess the facts that would answer these crucial questions regarding notice and substantial continuity. The district court should have allowed Reed time to conduct discovery regarding the circumstances of Falls Chevrolet's acquisition. *See Chicago Truck Drivers Pension Fund v. Tasemkin, Inc.,* 59 F.3d 48, 49 (7th Cir.1995) (owing to the "myriad" contexts in which the successorship question can arise, "emphasis on the facts of each case as it arises is especially appropriate") (internal quotation marks and citation omitted).

## C. Judicial Bias.

 Reed's remaining contention is that Judge Randa should have recused himself because (1) his order demonstrated that he had a negative "attitude" about Reed's filing of previous discrimination claims, and (2) he had presided over another case in which Reed's wife was the plaintiff. A federal judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or "[w]here he has a personal bias or prejudice concerning a party ...," 28 U.S.C. § 455(b)(1). To the extent Reed's argument falls under § 455(a), he waived it because he failed to move for recusal until after the district court granted summary judgment. *See United States v. Ruzzano,* 247 F.3d 688, 694 (7th Cir.2001). Our case law is less clear as to whether Reed can raise a claim of judicial bias under § 455(b) for the first time on appeal. *See United States v. Smith,* 210 F.3d 760, 764 (7th Cir.2000) (comparing conflicting authority). We need not resolve the issue, however, because Judge Randa was not required to recuse himself. Reed must prove actual bias by compelling evidence, *see Brokaw v.*

*Mercer County,* 235 F.3d 1000, 1025 (7th Cir.2000), and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Rather, a judge's bias must "arise from an extrajudicial source." *O'Regan,* 246 F.3d at 988 (citation omitted). Even assuming that Judge Randa's attitude toward Reed was negative, a negative attitude alone is not compelling evidence; it is "within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Hook v. McDade,* 89 F.3d 350, 355 (7th Cir.1996). In any event, Reed failed to demonstrate that any negativity on Judge Randa's part arose from an extrajudicial source.

The district court's grant of summary judgment as to Reed's Title VII claims arising out of conduct that occurred before July 31, 1997 is AFFIRMED, as those claims are time-barred. The district court's grant of summary judgment as to Reed's remaining claims is REVERSED, and this case is REMANDED for proceedings not inconsistent herewith. Reed's motions for an award of costs and for sanctions are DENIED.