**Melvin D. REED, Plaintiff–Appellant,**

**v.**

**LAWRENCE CHEVROLET, INC., and Falls Chevrolet, Inc., Defendants–Appellees.**

**No. 02–3423.**

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 23, 2004.[1]

Decided Aug. 3, 2004.

---

Melvin D. Reed, Milwaukee, WI, pro se.

Laurie E. Meyer, Borgelt, Powell, Peterson & Frauen, Milwaukee, WI, for Defendant–Appellee.

Before BAUER, COFFEY, and WILLIAMS, Circuit Judges.

## ORDER

Appellant Melvin Reed sued under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e & 42 U.S.C. § 1981, alleging that Lawrence Chevrolet, Inc. ("Lawrence"), a car and truck dealership in Menomonee Falls, Wisconsin, failed to hire him on a number of occasions and unfairly discriminated against him based on his race. Reed also alleged that Falls Chevrolet, Inc. ("Falls"), which subsequently acquired Lawrence's assets, purchased Lawrence's liabilities and, therefore, is liable as a successor corporation. In September 2000, the district court, Judge Rudolph Randa presiding, granted summary judgment for the defendants, concluding that Reed's Title VII claims were partially time-barred, that Reed failed to present sufficient evidence showing that Lawrence's proffered reasons for refusing to hire him were pretextual, and furthermore that Falls was not liable as a successor.

Reed appealed this judgment, and in an unpublished order, *Reed v. Lawrence Chevrolet, Inc.,* 14 Fed.Appx. 679 (7th Cir. 2001), we affirmed in part, reversed in part, and remanded. We affirmed the district court's conclusion that Reed's claims based on alleged discrimination occurring before July 31, 1997 were time-barred.[2] We reversed the district court's grant of summary judgment on the claims arising out of Lawrence's decisions not to hire Reed in August 1997 and March 1998. In doing so, we concluded that the trial court abused its discretion when denying Reed's Rule 56(f) motion for additional time to conduct discovery on the issues of pretext and corporate successor liability. We remanded the case in order that Reed could conduct additional discovery, after which time his surviving claims might be reheard. Finally, we rejected Reed's argument that Judge Randa was required to recuse himself because Reed had failed to establish that the judge harbored actual bias against Reed which arose from an extrajudicial source.

On remand, Reed was provided ample opportunity to conduct additional discovery, which he used to acquire numerous documents from Lawrence's personnel files and deposition testimony from Lawrence employees who were involved in the decisions not to hire him. Following discovery, the defendants renewed their motion for summary judgment, which the district court granted. Judge Randa explained that the record lacked evidence from which a reasonable fact-finder could conclude that the non-discriminatory reasons Lawrence offered for declining to hire him were a pretext for discrimination. Reed once again appeals.

---

2. This date was 300 days prior to when Reed had filed his discrimination charge with the Equal Rights Division of the Wisconsin Department of Workforce Development and the Equal Employment Opportunities Commission. *See* 42 U.S.C. § 2000e–5(e)(1).

As to the merits of the appellant's Title VII claims, we adopt the attached, well-reasoned decision and order of the district court, dated August 13, 2002. However, we do address briefly two issues that Reed raises in his appellate brief.

First, Reed alleges that the district court's decision contains a factual error regarding Lawrence's decision not to hire Reed for the position of Finance Manager in 1997. Lawrence has stated that on September 3, 1997, they hired another applicant, Jackie Lefco as Finance Manager instead of Reed because she "had several years of car finance experience." Malinowski Aff. ¶ 7. Then, on or about November 10, 1997, Lefco was replaced by John Dentice as permanent Finance Manager due to his "approximately nine and one-half years' experience as an [finance] manager." *Id.* at ¶ 8. Lawrence claims that both of these employment decisions were based on solely on the superior experience of the applicants (as compared to Reed's relative inexperience). Reed contended in district court that this reason was pretextual. He did so, in part, by arguing that F. Joseph Goodson, the general sales manager at Lawrence, lied when he told Reed "in late August 1997" (which was shortly after Reed had submitted his application) that the finance manager position had already been filled. In response to this argument, the trial judge noted that Reed's own complaint had alleged that he was first informed in *October* of 1997 that the position had been filled (according to Lawrence, Jackie Lefco was hired on approximately September 3, 1997). Judge Randa then stated: "Because Reed wrote a follow-up letter to Goodson dated October 11, 1997, the chronology alleged in the complaint seems more plausible than the one Reed is now attempting to construct. If the conversation had taken place in late August as Reed now claims, one would expect a follow-up letter dated sometime in September." August 13, 2002 Decision and Order, at 6–7.

 Reed disputes this statement and in a buck shot approach notes that the record does contain a letter from him addressed generally to Lawrence (the salutation reads "Dear Sir or Madame"), which is dated "September 1997." As noted in the trial court opinion, the letter was not directed specifically for Mr. Goodson, nor did it mention any prior discussions between Goodson and Reed. Thus, Judge Randa's statement was accurate insofar as that it stated that there is no September follow-up letter from Reed *to Goodson.* In any event, the existence of a letter of this nature dated in September, adverse to their position as it may be, is insufficient to deny the defendants summary judgment. This is due to the fact that Reed's case is based on his pretext argument and his that his qualifications for employment were comparable to those individuals whom Lawrence hired instead of him. Yet, as the district court explained (and we agree), Reed has failed to present any evidence showing that his credentials were even *equal* to those of any person hired by Lawrence,[3] much less "*so superior* to the

---

**3.** Reed also applied for a sales job with Lawrence in March of 1988 (well after he had been turned down for the finance position) and indicated on the application that he sought a job in "sales (evential [sic] [finance])." Cowles Aff., Exh. 4, p. 1. In not hiring Reed for that position, Lawrence cited: (a) Reed's expressed desire to work in finance instead of sales; (b) their belief that Reed would not be content to remain in sales and would not fill that position very long; (c) their desire to find an applicant who would remain in a sales position long-term; and (d) their concern over large gaps in employment in Reed's application. Reed claims that these reasons were pretextual and relies mainly on a comparison between his qualifications and those of other (caucasian) salespersons hired

credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180–81 (7th Cir.2002) (internal quotation marks and citations omitted) (emphasis added). Reed's singular response to this controlling law is to say that *"Millbrook* is only one case, and it's a dumb one." Appellant's Brief at 20. Reed's other disputes with the district court's findings regarding the undisputed facts are without merit and do not warrant further discussion.

Reed also renews his claim that Judge Randa should have recused himself because he allegedly exhibited an improper judicial bias while adjudicating this case. We fully adjudicated Reed's claim of bias in our July 23, 2001 order resolving his initial appeal and we refuse to address the question of whether Judge Randa committed any error in declining to recuse himself (we held that he did not). *See Reed v. Lawrence Chevrolet, Inc.*, 14 Fed.Appx. 679 (7th Cir.2001).

█ Finally, Lawrence has filed a motion entitled "Defendant–Appellees' Motion for Double Costs and Attorney's Fees— Frivolous Appeal" which requests that this court award both costs and attorneys fees under Rule 38 of the Federal Rules of Appellate Procedure. In addition, Lawrence requests that we declare Reed a "vexatious litigant," *see Chambers v. Nasco, Inc.*, 501 U.S. 32, 43–46, 111 S.Ct. 2123,

115 L.Ed.2d 27 (1991), and enjoin him from filing any further cases in any federal court in this Circuit without express leave of this Court. The defendants motion is denied.

Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." FED. R.APP. P. 38. Although Reed's argument that Lawrence's explanation of their decision not to hire him was pretextual is seriously flawed, we cannot find that it is frivolous.[4] *See Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (an appeal may be considered frivolous when it lacks substance and is "forordained" to lose). As mentioned above, Reed filed a meritorious appeal in this same case (proceeding *pro se* nonetheless), therefore, at least in this litigation he cannot be considered a repeat offender. *Cf. Bethesda Lutheran Homes and Servs., Inc. v. Born*, 238 F.3d 853, 859 (7th Cir.2001). Also, as part of our discretionary review of Lawrence's motion, we find that the defendants have failed to established that Reed's filing of this successive appeal was an exercise of bad faith. *In re Generes*, 69 F.3d 821, 828 (7th Cir. 1995); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 331 (7th Cir.1995). Having refused to impose sanctions under Rule 38, we also decline Lawrence's invitation to enjoin Reed from filing future ac-

---

by Lawrence. However, as the district court held, Reed has failed to identify a single candidate that was hired and "presented the same combination of unfavorable characteristics as Reed." August 13, 2002 Decision and Order, at 11. Therefore, we agree with Judge Randa's conclusion that because Reed has failed to establish that he was even as qualified as the other applicants, his claim must fail. *See Millbrook*, 280 F.3d at 1180–81.

4. However, it should be noted that had Reed's appeal dealt solely with his argument that Judge Randa committed an error in refusing to recuse himself, we would not have hesitated to find his appeal frivolous due to our earlier adjudication of that matter. *See Reed v. Lawrence Chevrolet, Inc.*, 14 Fed.Appx. 679 (7th Cir.2001).

tions in the federal courts of this Circuit and declare him a "vexatious litigant."

The decision of the district court is AFFIRMED, and defendant's Motion for Double Costs and Attorney's Fees is DENIED.

## DECISION AND ORDER

This matter comes before the Court on a renewed motion for summary judgment by the defendants, Lawrence Chevrolet, Inc. ("Lawrence") and Falls Chevrolet, Inc. ("Falls"), following the remand of this case by the Seventh Circuit. The plaintiff, Melvin D. Reed ("Reed"), is African–American. He alleges that Lawrence refused to hire him as a finance manager in 1997, or as a car salesman in 1998, on the basis of his race, contrary to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981. Reed also claims that Falls is liable under Title VII as the corporate successor to Lawrence. Although Reed has had ample opportunity to conduct discovery following the remand of this case, he has failed to adduce sufficient evidence of discrimination to defeat the defendants' renewed motion. Specifically, the record lacks evidence from which a reasonable fact-finder could infer that Lawrence's stated reasons for not hiring Reed were a pretext for discrimination, *i.e.,* a "lie" or "phony." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995). This being so, the Court

need not reach the question of corporate successor liability.

## BACKGROUND[1]

Reed filed this lawsuit three years ago, in August of 1999. Early in the case, the defendants filed a summary judgment motion in which they argued that: (1) some of Reed's claims were time-barred, (2) Falls was not liable as a successor corporation to Lawrence, and (3) Reed had failed to demonstrate pretext under the familiar *McDonnell–Douglas* framework.[2] Reed moved for a stay of the proceedings so that he could conduct discovery on issues (2) and (3). Finding that a substantial record had already been developed in state administrative proceedings, the Court denied Reed's motion and entered summary judgment in defendants' favor, agreeing with each of the defendants' three contentions.

On July 23, 2001, the Seventh Circuit affirmed the Court's findings relative to the statute of limitations issue, effectively eliminating claims arising out of Lawrence's alleged failure to hire Reed in *1996.* The Court of Appeals also rejected Reed's argument that the undersigned was unfairly biased against him and ought to have recused himself. Nevertheless, the Seventh Circuit did reverse in part, and remand the case, because it believed that this Court ought to have given Reed an opportunity to conduct further discovery on the issues of "pretext" and corporate

1. The Court assumes familiarity with is Decision and Order of September 7, 2000, which sets forth much of the needed factual background, the legal framework for refusal-to-hire cases under Title VII, and the standards that apply to a motion for summary judgment under Rule 56.

2. This framework requires a three-part inquiry: (1) the claimant must establish a prima facie case of discrimination; (2) the defendant must articulate a legitimate, non-discrimina-

tory reason for the adverse employment action; and (3) the claimant must prove that the employer's preferred reason is a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The same framework applies to claims under 42 U.S.C. § 1981. *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 807 n. 9 (7th Cir.1999), *cert. denied,* 530 U.S. 1204, 120 S.Ct. 2197, 147 L.Ed.2d 233 (2000).

successor liability before ruling on the defendants' summary judgment motion.

On May 30, 2002, the defendants filed a renewed motion for summary judgment. The parties agree that Reed has had ample opportunity to conduct discovery since the case was remanded by the Seventh Circuit. Furthermore, because the defendants have conceded that Reed is capable of proving a *prima facie* case of discrimination, and because the defendants have articulated legitimate, non-discriminatory reasons for refusing to hire Reed, the parties also agree that this case boils down to "pretext," which it is the plaintiff's burden to prove under *McDonnell Douglas.* Plaintiff's Brief In Response To Defendants' Renewed Motion for Summary Judgment ("Opp.Brief—RM"), p. 4; Defendants' Reply Brief ("Repl.Brief—RM"), p. 2.

## DISCUSSION

### I. PRETEXT

" 'Pretext' means a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1175 (7th Cir.2002). A pretext for discrimination "means more than an unusual act; it means something worse than a business error, 'pretext' means deceit used to cover one's tracks." *Id.* (quotation omitted). Thus, even if the defendants' reasons for selecting one candidate over another were "mistaken, ill-considered or foolish," pretext has not been shown "so long as [the employer] honestly believed those reasons." *Id.* In order to show pretext, moreover, the plaintiff must specifically rebut *each* legitimate, non-discriminatory reason given by the defendants for not hiring him. *McCoy v. WGN Continental Broadcasting*

Co., 957 F.2d 368, 373 (7th Cir.1992); *Russell,* 51 F.3d at 69.

With the foregoing standards in mind, the Court turns to the specific employment decisions under attack in this case; namely, the decision not to hire Reed as a finance manager in 1997, and the decision not to hire him as a car salesman in 1998.

### II. 1997

Reed applied for the position of finance manager at Lawrence in late August of 1997. In early September, Lawrence hired Jackie Lefco ("Lefco"), as a temporary finance manager. Defendants' Proposed Findings Of Fact In Support Of Renewed Motion ("DPFOF—RM"), ¶ 13.[3] It is undisputed that Lefco had several years of car finance experience. *Id.* Later in the Fall of 1997, Lawrence replaced Lefco with John Dentice ("Dentice"), who had more than nine years of car finance experience. *Id.,* ¶ 14. Both Lefco and Dentice are white. PPFOF—RM, ¶¶ 9, 11.

Lawrence maintains that it did not hire Reed because he lacked experience in car finance, car sales, "or any other motor-vehicle related business." Defendant's Brief In Support Of Summary Judgment, p. 10. Lawrence's preferred reason for hiring Lefco and Dentice instead of Reed is that these individuals *did* possess such experience. Reed argues—as he must under the controlling case law—that this assertion is not only "dead wrong," but an outright lie concocted after Lawrence decided not to hire him. Opp. Brief—RM, p. 8. The record, however, will not bear this interpretation.

Reed first attempts to show pretext by comparing his qualifications with those of

**3.** References to the DPFOF–RM and the Plaintiff's Proposed Findings of Fact In Opposition To Renewed Motion ("PPFOF–RM") are to undisputed paragraphs therein, unless the context indicates otherwise.

the individuals who were hired. This method of proving pretext is a difficult one, as the Seventh Circuit recently explained:

> where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue. In other words, in effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.
>
> This makes sense because a court's role is to prevent unlawful hiring practices, not to act as a "super personnel department' that second-guesses employers" business judgments. As we have stated, no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [Title VII] does not interfere. Rather, [federal courts] must respect the employer's unfettered discretion to choose among qualified candidates.

*Millbrook,* 280 F.3d at 1180–81 (quotations omitted).

Reed claims that he actually did have "experience in car finance"—comparable to that of Lefco and Dentice—because he took a two-week course in automobile finance. Opp. Brief—RM, p. 8. This argument strikes the Court as ludicrous, especially in light of the circuit precedent quoted above (which Reed does not even acknowledge). To show pretext using comparative qualifications, Reed must establish that his credentials were so *superior* to those of Lefco and Dentice that no reasonable employer could have selected these individuals over Reed for the position of finance manager. *Millbrook,* 280 F.3d at 1180. Reed's qualifications, however, were plainly *inferior* to those of Lefco and Dentice, who each had *years* of *on-the-job* car finance experience. Reed lacked any such experience, and there is simply no way a reasonable jury could conclude that his two-week course in automobile finance vaulted him into the same category with Lefco and Dentice.

Reed also attempts to show pretext by arguing that he had experience in "sales *generally.*" *Id.* (emphasis added). To the extent sales experience was relevant to the finance position at all, it seems obvious that Lawrence preferred experience in *car* sales over experience in "sales generally." Given that Lawrence was a car dealership, this hardly seems like an unreasonable preference.

Lastly, Reed attempts to show that F. Joseph Goodson ("Goodson") lied when he told Reed "in late August 1997" that the finance manager position had been filled. *Id.* (Lefco was not offered the position until September 3). Reed's own complaint alleges that he was informed that the position had been filled in *October* of 1997, well *after* Lawrence had hired Lefco. Complaint, p. 2. Because Reed wrote a follow-up letter to Goodson dated October 11, 1997, the chronology alleged in the complaint seems more plausible than the one Reed is now attempting to construct. If the conversation had taken place in late August, as Reed now claims, one would expect a follow-up letter dated sometime in September. Moreover, Goodson's deposition testimony offers only weak support for the "late Augustlie" scenario. Reed's application is dated August 27, 1997.

Goodson recalls speaking with Reed by telephone, and believes that the position had been filled when they spoke. Deposition of F. Joseph Goodson ("Goodson Dep."), p. 19. However, Goodson was never asked about the timing of this conversation, or about the basis for his belief that the position had been filled. *Id.* Indeed, the only reason to assume that the conversation took place in late August is Goodson's heavily qualified testimony that he "usually" called those who had mailed in their applications within 24 to 48 hours. *Id.* The Court also takes judicial notice of the fact that Labor Day in 1997 fell on Monday, September 1, which may well have delayed (or interrupted) the processing of Reed's application.

Presenting Goodson's testimony as evidence of pretext is problematic for other reasons, as well. First and foremost, Goodson never met Reed and was unaware of the plaintiff's race until Reed brought suit. *Id.*, pp. 19 & 30. Thus, even if Goodson *did* lie to Reed, there is no evidence that he did so on account of Reed's race. The Court also notes that the individual who actually made the decision to hire Lefco was not Goodson but the dealership's owner, Larry Malinowski ("Malinowski"). *Id.*, p. 32. There is no evidence in the record that *Malinowski* disbelieved the proferred reason for hiring Lefco over Reed, *i.e.*, Lefco's superior qualifications.

## III. 1998

On or about March 4, 1998, Reed again applied for a position at Lawrence, indicating that he was seeking a position in the "sales, eventual [sic] F&I"[4] departments. DPFOF—RM, ¶ 15. Lawrence ended up hiring 14 salespersons between March of 1998 and the end of that year. PPFOF—RM, ¶ 23. All were white. *Id.*

Lawrence claims that it did not hire Reed as a salesman in 1998 because Reed expressed a desire to obtain a finance position, and because Lawrence believed that if Reed were offered a sales position he would not remain in such a position for long. Reply Brief—RM, p. 7. Lawrence also claims that it was concerned about gaps in Reed's employment history. *Id.* Lastly, Lawrence points out Reed lacked any car sales experience, in contrast with several of the candidates who were selected. *Id.*, p. 12. According to Reed, the reasons advanced by Lawrence for not hiring him are "dishonest, pretextual and a cover up for discrimination...." Opp. Brief—RM, p. 10.

In challenging the reasons preferred by Lawrence for not hiring Reed in 1998, Reed's first line of attack is to argue that these reasons are inconsistent with the terms of the ad that Lawrence placed seeking sales staff. Specifically, Reed argues that "[n]othing in the ... ad ... mentioned that an interest in a long-terms sales career was required, or that anyone interested in a finance manager position would not be hired as a salesperson." Opp. Brief—RM, p. 10. Likewise, the ad specified that no previous car sales experience was required. Reply Brief—RM, p. 7. Neither "inconsistency," however, leads to a reasonable inference of pretext. The purpose of an employment ad is not to recite all of the potential reasons an employer might turn down an applicant. Rather, it is to give notice of the job opening and a general sense of the job requirements. Thus, the failure of the ad to state that Lawrence would reject sales applicants interested in moving to another department is not evidence that Lawrence is lying when it says that it turned down Reed (in part) for this reason. Clearly, the ad also stated *minimum* job require-

---

4. "F & I" refers to "finance and insurance."

ments. Thus, while the ad may have stated that experience was not required, this hardly precluded Lawrence from hiring applicants who possessed relevant experience.

Reed also claims that Lawrence must be lying about its stated reasons because Peter Steinhauer ("Steinhauer") selected Reed for an interview *after* reading his application and resume, which indicated "sales," and then in parentheses "evential [sic] F&I." According to this logic, Steinhauer must have concluded that Reed was qualified for a sales position—notwithstanding his stated desire for a finance position—because he selected Reed for an interview. This argument, too, ignores the realities of the workplace by suggesting that employers only interview candidates who are deemed fully qualified. The record reflects that Reed's interest in finance was noted and discussed during the interview, and that Steinhauer raised it as a concern when he discussed Reed's application with Malinowski. Deposition of Peter A. Steinhauer ("Steinhauer Dep."), pp. 38, 41–42. Reed maintains that Steinhauer "never raised an eyebrow" about this during the interview and indeed "respected that I wanted to go into finance management." PPFOF—RM, ¶ 15; Opp. Brief, p. 10. Assuming, for the sake of argument, that Reed recalls the meeting correctly, is Steinhauer's "respect" for Reed's desire to advance really incompatible with his desire to avoid the loss of a salesman to another department? It seems to the Court that both could be perfectly sincere, and that there needs to be much stronger evidence than this to warrant the inference that Lawrence *lied* about is reasons for not hiring Reed.[5]

Lastly, Reed relies on comparisons between his own qualifications and those of white individuals Lawrence hired as salespeople between 1995 and 1998.[6] Under the standard articulated in *Millbrook*, this is perilous ground for Reed because—again—he fails to establish that his credentials were *so* superior to those of the candidates Lawrence hired that "no reasonable person ... could have chosen the candidate[s] ... over the plaintiff for the job in question." *Millbrook*, 280 F.3d at 1180–81. A plaintiff seeking to prevent summary judgment on the strength of relative qualifications must have credentials so much better than the person(s) selected that the disparity "virtually ... jump[s] off the page and slap[s] us in the face." *Deines v. Texas Dept. of Protective & Reg. Servs.*, 164 F.3d 277, 280 (5th Cir.1999). Reed does not even succeed in making the case that he was *as* qualified as any of the individuals hired by Lawrence. Reed points to some candidates who, like himself, had gaps in their employment history. Likewise, he identifies some candidates

---

5. Likewise, the Court is not persuaded that Goodson's deposition testimony creates a genuine factual issue as to pretext. Goodson testified that he promoted salesmen from sales positions "to business offices or sales management positions." Goodson Dep., p. 27. However, this testimony concerned his practices in the past, at other dealerships. Furthermore, Goodson left Lawrence in January of 1998 and played no role in the (second) decision not to hire Reed.

6. Lawrence raises some legitimate concerns about the extent of this time frame. Specifically, Lawrence points out that 26 of the individuals cited by Reed were hired in 1995, 1996, or early 1997. For purposes of the statute of limitations, at least, the Seventh Circuit has ruled that conduct prior to August of 1997 is off the table. The Court also doubts the relevance of these hires, as they were selected by a different manager. *See Curry v. Menard*, 270 F.3d 473, 478 (7th Cir. 2001).

who expressed a desire to advance to management positions (albeit, management positions *within the sales department*).[7] However, as the defendant notes, not one of these candidates presented the same *combination* of unfavorable characteristics as Reed, namely: (1) the desire to move into a position in an entirely different department; (2) lack of car sales experience; *and* (3) multiple, lengthy gaps in employment.

For all of these reasons, the Court concludes that Reed has failed to defeat summary judgment, despite being afforded ample opportunity to conduct discovery on the issue of pretext. Because there is no Title VII liability which Falls could inherit, the Court need not decide whether Falls is the corporate successor to Lawrence, as Reed maintains.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Defendants' renewed motion for summary judgment is GRANTED; and the action is dismissed with prejudice.

SO ORDERED,

---

**7.** Reed also argues that the driving records of some of the white individuals hired by Lawrence were so poor that Lawrence's insurance company refused to let them drive dealership vehicles. The Court fails to see the relevance of this information, which was not discovered until *after* these individuals were hired.